# CHARLESTON.

STATE *ex rel.* FRANK CONSTANZO *v.* HON. ALAN H. ROBINSON, JUDGE.

Submitted October 26, 1920. Decided November 23, 1920.

1. MUNICIPAL CORPORATIONS—*Ordinance Relating to Operation of Motor Vehicles in City Streets Conflicting with State Law Void.*

   Sections 3 and 4 of an ordinance of the city of Wheeling, passed April 6, 1920, relating to the operation of motor vehicles upon its streets, being in conflict with the provisions of chapter 43 of the Code, as re-enacted by chapter 66 Acts 1917, known as the good roads law, are void and unenforceable by criminal or other legal proceedings. (p. 376).

2. SAME—*Ordinance Attempting to Cover Matters Comprehensively Dealt with by State Law is Invalid.*

   When the general law of the state has so dealt comprehensively with the subject matter of a municipal ordinance, the general law is dominant and controlling and the ordinance is invalid and unenforceable, in the absence of specific authority conferred by the legislature. (p. 382).

   (WILLIAMS, PRESIDENT, absent).

Prohibition by the State, on the relation of Frank Constanzo, against Hon. Alan H. Robinson, Judge, etc.

*Writ of prohibition awarded.*

*George A. Blackford, Tom B. Foulk* and *J. M. Ritz,* for relator.

*J. J. P. O'Brien,* for respondent.

MILLER, JUDGE:

By rule awarded on October 13, 1920, respondent was summoned to appear here and show cause why he should not be prohibited from proceeding to try petitioner upon his appeal from a judgment of the police court of the City of Wheeling, upon a warrant of arrest issued July 6, 1920, charging him with a violation, on June 26, 1920, of sections 3 and 4 of an ordinance of said city, passed April 6, 1920, relating to traffic on streets, alleys and highways of said city, but repealed or revoked, without savings or reservations respecting pending prosecutions, by an ordinance passed July 13, 1920, in so far as the same or any part thereof was in conflict therewith.

Sections 3 and 4 of the ordinance of April 6, 1920, provided as follows:

"Section 3.  No motor or other vehicle, which, with its load weighs in excess of fifteen tons, and no motor or other vehicle, bearing in excess of six hundred pounds per inch width of tire shall be operated or permitted to be operated upon any of the streets, alleys and avenues of the City of Wheeling; except by special permit of the city manager and then only conditioned that the owner thereof shall pay to the City any and all damage that may result from the operation of such vehicle to such streets, alleys and avenues.

"Section 4.  In loading vehicles for operation on the city streets the same will be adjusted that no more than six hundred pounds per inch width of tire shall bear on any tire of said vehicle, and any load concentrating weight upon any tire of said vehicle in excess of six hundred pounds per inch width thereof bearing upon the surface of the streets shall not be permitted; and any person, firm or corporation operating or per-

mitting to be operated a vehicle otherwise loaded than in this section mentioned shall be punished as hereinafter provided."

The specific act of violation charged is that on the day specified petitioner within said city did unlawfully without special permit of the city manager operate and cause to be operated upon and over Main Street in said city a motor vehicle loaded with coal, which with its load bore upon said street in excess of six hundred pounds per inch width of tires of said vehicle, to-wit, 5200 pounds, contrary to the provisions of said ordinance.

The facts are not in dispute. A number of legal propositions are advanced by the petitioner's counsel to justify award of the writ. First, that the subject matter of the ordinance of April 6, 1920, is fully and completely covered by sections 118 to 143 inclusive, and also by sections 181 to 184 inclusive, of chapter 43 of the Code, the general law, and that the ordinance in question is in conflict with the statute and can not avail over the provisions of the general law: Second, that as the ordinance of April 6, 1920, was repealed or revoked by the amendatory ordinance of July 13, 1920, without savings or reservations, as stated, the prosecution would be abortive and unavailing as a means of punishment for the alleged violation of the repealed ordinance: Third, because the repealed ordinance is itself void for the reasons stated in the first proposition.

It is manifest that if the first of the three propositions be affirmed, it will be decisive of the case, and that the other propositions will become moot or immaterial.

Chapter 43 of the Code, as amended and re-enacted by chapter 66 Acts 1917, familiarly known as the good roads law, was manifestly intended to be comprehensive of all other laws of a general nature coming within its purview or scope. As declared in the first section of the statute, its purpose was "to amend, re-enact, codify and embrace in one act all the general laws of this state on the subject of public roads, ways and bridges, to provide a complete system of law governing the construction and maintenance of public roads and ways and the regulation of traffic thereon, to classify such roads and provide for a connecting system of highways throughout the State, to provide methods of raising revenues for the construction and

maintenance of such roads, to provide for the co-operation of the state and the federal government in raising and expending such revenues, to create a state road commission and prescribe the duties and define the powers of such commission and of all state and local officers engaged in the administration of the road laws of this state." And the last clause of said section provides that "this act shall be liberally construed, so as to effectuate the purposes thereof as herein set out."

Section 4 of the act, defining public road or highway, among other things says: "Such public road or highway shall be taken to include any road to which the public has access and is not denied the right to use, or any road or way leading from any other public road over the land of one or more persons to the land of another person, and which shall have been established pursuant to law." This definition does not in express terms include streets and alleys of incorporated cities, towns and villages, but they are comprehended in the general term "public road." Besides, other provisions of the statute plainly show that for the purposes of revenue, licensing, regulation of traffic, up-keep and repair, such streets and alleys are specifically comprehended, and that to construe the statute otherwise would leave conflict of authority to control for such purposes. Moreover, the last section, section 185, of the act, the repealing statute, says that the statutes specifically mentioned, "together with all other acts and parts of acts coming within the purview of this act and inconsistent herewith, are hereby repealed; *provided, however,* that this act shall not be construed to repeal or affect any local act or acts heretofore passed relating to roads, streets, alleys, bridges or public landings, and not herein specifically referred to, amended or re-enacted."

It is contended that this last clause of section 185 saves the ordinance in question as ordained under section 23 of the charter of the city of Wheeling, chapter 21 Acts 1915 (Municipal Charters), providing: "The council shall have the custody and control of the streets, alleys and public grounds of the city, with all the powers with reference thereto, which are held by the city immediately before this charter takes effect, and all such powers as are now or hereafter shall be held by councils of

cities, towns and villages organized under the general laws of
the state; subject, however, to the provisions of this charter."

·But to give this provision, or any other provision, of the
charter the status of a "local act," protected by the repealing
section of said chapter 43, the good roads law, would render
nugatory and ineffectual numerous provisions of that law and
destroy the plan and purpose therein declared of providing a
connecting system of highways throughout the state, raising
revenues, etc., for without the inclusion of the streets and alleys
of cities, towns and villages no such connecting system could be
created and maintained.

That the streets and alleys of municipalities were intended
to be included, not only for the purpose of such connecting sys-
tem of roads, but for regulation and revenue, is clearly manifest-
ed by many other provisions of the statute. Streets and alleys
of such municipalities are frequently referred to. Section 21
says: "The county court of each county shall establish two
or more main thoroughfares, highways or roads through said ·
county, at least one of which roads shall pass through or con-
nect with the county seat, and such roads shall be known as
'main county roads,' and shall be constructed and maintained in
each county by taxation upon all the taxable property of the
county, and by apportionments from the federal aid and state
road fund." Section 25 says: "There is hereby created a
'state road fund' which shall consist of the net proceeds of all
state license taxes imposed and collected upon automobiles,
motor or steam driven vehicles, and the registration fees im-
posed on chauffeurs," etc. When we come to section 118 and
following, we find complete provision for regulating the speed
and operation of motor vehicles, not only over the public roads,
but also upon the streets and alleys of cities, towns and villages,
and upon the roads of closely built up sections, defined by sec-
tion 118. The only saving in favor of municipalities is con-
tained in section 119, saying: "But nothing herein contained
shall be construed as prohibiting any city, village or town from
prescribing regulations not inconsistent herewith, relative to
the speed at which such vehicles shall be operated." Then we
find in section 127 provisions relating to the width and weight
of vehicles which·may be lawfully operated upon the highways

of the state, as follows: "No vehicle in excess of ninety inches in width shall be operated upon the highways of this state unless authorized by special permit from the state road commission, the county court of the county, the county or district engineer or patrolman, and then only upon highways of extra width; nor shall any vehicle, including load, exceeding thirty thousand pounds in weight, or on which the weight of the load is more than six hundred pounds per inch width of tire, the total width of the four tires being included in computing the weight there- of, be operated upon the highways of this state unless by special permit from one of the authorities hereinbefore designated, and then only upon highways specially constructed for heavy traffic. Any person operating any such vehicle under such a special permit shall be required to pay to the county court of the county the amount of any and all damages which may be caused to any highway by reason of the operation of such vehicle thereon, and the possession of said permit shall not relieve any person from liability for such damages." Section 130 prohibits the driving of motor vehicles "upon the public roads of this state, or upon any road or street within any incorporated city, town or village within the state, without the owner first having obtained from the state road commission, as herein provided, a certificate of registration therefor," etc. Following this and other provisions, we find section 139 providing for permits and privilege taxes for operating motor vehicles for transportation of passengers and freight for hire as follows: "It shall be the duty of each owner of a motor vehicle to be used in public transportation of passengers for hire, or in public transportation of freight or merchandise for hire, or in the transportation of private merchandise or freight over any wholesale or retail delivery district, operating over state aid, federal aid, main county and district roads, or over such roads and the streets and roads within the corporate limits of any city or town, in this state, to procure a permit from the state road commission to operate said vehicle over said roads and streets, and to pay into the state treasury, to the credit of the state road fund, such annual privilege tax therefor as may be prescribed by said state road commission for the privilege of operating such motor vehicle over said roads and streets; *provided,* that the requirements of this section shall not apply

to such motor vehicles when used for such transportation pur-
·poses wholly within the limits of any incorporated · city or
town." Then comes section 140, which says: "The state road
commission shall have full power to make and enforce rules and
regulations for the protection of· all streets and roads from un-
necessary damage by the operation of such vehicles, and shall
·levy and collect such privilege tax on each permit granted, as
will lay upon the owners or operators of each class of such ve-
·hicles an equitable share of the burden of cost for the up-keep
and maintenance of such streets and roads. In carrying out
the purposes of this act, the state road commission shall classify
such motor vehicles and fix the amount of the privilege tax
to be paid for a permit on vehicles of each class and shall
prescribe rules and methods for the computation of such tax."

These two sections cover the subject of sections 3 and 4 of the
municipal ordinance under which petitioner is being prosecuted.
And section 140 makes special provision for the protection of
roads and streets from damage.

But if there could be any doubt about the dominant authority
of the good roads law over any municipal authority, we think
that doubt is removed by the provisions of sections 142 and 143
of chapter 43 of the Code; the first of these sections providing
for the distribution of the state road fund as follows: "The
state road commission shall devise a system of keeping a sep-
arate account of all moneys collected and remitted to the auditor
under the provisions of section eight, and shall on or before the
first day of January and July of each year, prepare a state-
ment showing the amount so collected, for the use of state aid,
federal aid, main county and district roads, and streets and
roads within each county, district and incorporated city and
town, within this state, and said state road commission shall from
time to time cause such roads and streets to be inspected, and
if the respective authorities have kept such roads and streets
in repair and said commission shall certify such facts to the
auditor who shall upon receipt of such certificate transmit his
warrant, drawn upon the treasurer, payable to the proper town,
city or county official, for ninety per cent. of the amount so
collected for the use of such streets or roads other than state
aid and federal aid roads, within the respective jurisdiction,

to be used in repair and maintenance of streets and roads upon which such motor vehicles for the transportation of passengers or freight were operated. The amount so to be distributed for the maintenance of streets and roads within any county, district, incorporated city, or town, shall be computed upon a pro rata mileage basis, in accordance with rules to be prescribed by the state road commission. All moneys collected from the licensing of such vehicles and credited under said rules to their operation over state aid, federal aid, and inter-county roads, including ten per cent. of all moneys collected for the use of main county and district roads, and streets and roads within incorporated towns and cities, shall be paid into a general state road fund, to be used as the state road commission may direct in the maintenance and repair of state aid, federal aid, and inter-county roads." The language of section 143 is: "The privilege tax provided for in section one hundred and thirty-nine of this act, shall be levied in addition to the prescribed regular state tax on motor vehicles, and no other license fee or tax shall be charged by the state or any municipality or other political subdivision thereon, except the regular property tax, with respect to such vehicles and their operation."

How can there be any doubt about the purpose of the legislature to commit to the state road commission the entire subject of regulating the weight of and the permits and privilege taxes imposed for operating motor vehicles, not only upon the county roads, but upon the streets and alleys of municipalities? The only saving in favor of such municipalities is that contained in section 119, as follows: "But nothing herein contained shall be construed as prohibiting any city, village or town from prescribing regulations not inconsistent herewith, relative to the speed at which such vehicles shall be operated."

The legislature having so provided in said chapter 43, it is well settled by our decisions that the municipal ordinance under which petitioner is being prosecuted, in so far as it prescribes different conditions and additional burdens and penalties, must be held invalid. In *Judy* v. *Lashley*, 50 W. Va. 628, we decided in effect that when the general law of the state prescribes offenses and penalties therefor, it is not within the power of a

municipal corporation, under some general provision of its charter, to prescribe the same offense and punish the offender therefor, in the same or in a different manner, without specific authority therefor in its charter. In that case the offense was carrying a deadly weapon, made an offense and punishable as prescribed by the ordinance, and where it was held that the ordinance was in conflict with the general law, and therefore void. The same principle was declared and applied in *State ex rel. Morley* v. *Godfrey*, 54 W. Va. 54, where we held that chapter 151 of the Code, fully covering the subject of gaming and gaming devices and specifically defining what should constitute offenses and fixing the penalties which should be imposed for violation thereof, was exclusive, and that a municipality without special authority conferred by the legislature could not pass an ordinance covering the same subject and enforcing the same by fines and penalties. This rule and principle was recognized and applied also in *Block* v. *Crockett*, 61 W. Va. 421, 427; and in the recent case of *Bissett* v. *Town of Littleton*, 87 W. Va. 127, 104 S. E. 289.

Except as to those persons proposing to use roads and streets for special purposes and to carry on business thereon, all such roads and streets are to be regarded, under proper police regulations, as open and free to all persons to travel over them without unreasonable interference by anyone; they are the state's highways, and no municipality has the authority to exclude the public in general therefrom. If a municipality could exclude the public from such highways, it could stop all intercourse thereon between the citizens of different parts of the state, and between the citizens of this state and other states, by the mere arbitrary rule or regulation of its officers. This it can not do. The legislature could not lawfully authorize the exercise of such arbitrary power when not involving any special use of such roads and streets. *Ex parte Dickey*, 76 W. Va. 576.

The ordinance involved here undertakes, on conditions not consonant with the general good roads law, to exclude from its streets motor vehicles of the designated descriptions, except by special permit of the city manager, and then only upon condition that the owner shall pay the city any and all damages

that may result from the operation thereof over such streets, alleys and avenues, and undertakes to punish any and all violations thereof. As we have observed, sections 139 and 140 of chapter 43 authorize the state road commission to levy and assess against the owners of motor vehicles there described a privilege tax adequate to maintain their equitable share of the burden of the up-keep and maintenance of such streets and roads, and if on inspection, as provided by section 142, the municipality whose streets are traveled by such vehicles maintains and keeps the same in repair, it is entitled in the distribution of the state road fund to its share thereof.

We conclude therefore that the writ of prohibition prayed for should be awarded, and it will be so ordered.

*Writ of prohibition awarded.*