No. 33,338

EVERETT ASH et al., *Appellees*, v. E. V. GIBSON et al., *Appellants*.

(74 P. 2d 136)

Opinion on rehearing filed December 11, 1937.

*R. R. Redmond*, of Ottawa, for the appellants.

*Arthur L. Claussen* and *Richard B. McEntire*, both of Topeka, for the appellees.

*E. K. Childers, R. R. McCormack, Albert Faulconer, Kirke W. Dale, C. L. Swarts, Donald Hickman*, all of Arkansas City, *Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, C. G. Yankey, H. C. Osborne, J. G. Sears, J. E. Curran, G. W. Ball*, all of Wichita, and *A. B. Martin*, of Lawrence, as *amici curiae*.

The opinion of the court was delivered by

SMITH, J.: This case is here on rehearing. (See *Ash v. Gibson*, 145 Kan. 825, 67 P. 2d 1101.)

The facts are that the city of Ottawa enacted an ordinance providing that no truck should be driven through its streets carrying gasoline with a load in excess of 600 gallons. A company engaged in the business of transporting gasoline brought this action to enjoin the enforcement of the ordinance on the ground that the city did not have authority to enact it. The trial court held in favor of the plaintiff and enjoined the enforcement of the ordinance. The defendants appealed. This court held that the city did have authority to enact the ordinance and reversed the judgment of the trial court. The appeal was originally argued in this court on March 2, 1937. The opinion of reversal was filed May 8, 1937. The mandate did not go down to the trial court at once but was held the usual time for the filing of a motion for rehearing. This time was extended several times, and permission was given various parties interested in the general outcome of the litigation to file briefs as friends of the court. These briefs were filed and have proven helpful.

At the time the case was originally considered by this court the question of the power of the city to enact the ordinance in question was considered in view of the statutes in effect at that time.

On March 27, 1937, chapter 283 of the Laws of 1937 was approved. It took effect June 30, 1937. It was argued in the motions for a rehearing that this statute took away from the city authorities the right to enact the ordinance in question. When the motion for a rehearing was considered it appeared that two questions were involved —first, whether in considering an appeal from the district court this court should consider a statute which was not in force at the time the judgment in district court was entered, and second, whether chapter 283 had the effect on the power of municipal corporations that was claimed for it. Both questions were seen to be so serious that it was deemed wise to allow a rehearing. Those two questions have now been presented to this court.

We shall consider the first question. It must be remembered that this is an injunction case. Our judgment operates *in futuro*. The ordinance with which we are concerned never did take effect. Its enforcement was enjoined first by the district court of Franklin county, and that injunction remained in force while the cause was

pending in this court on the appeal and the motion for a rehearing. The basis of the judgment of this court reversing the judgment of the trial court was the statutes in relation to the power of city governing bodies in such matters. This was also the basis of the judgment of the trial court enjoining the enforcement. Since our judgment must operate *in futuro*, and since the ordinance never did take effect, it would seem wise for this court to examine the question with the idea of ascertaining whether the statute upon which the judgment of this court was based has been repealed or amended so as to curtail the power of the city authorities as to the ordinance in question. The entire matter is still in the hands of this court and but little would be gained should we take the position that we would consider only such statutes as were in effect when the trial court entered its judgment, or as were in effect when this court filed its first opinion. The only practical result would be that a new action would be filed immediately, and the trial court would take such action at the trial, and this court would take such action on appeal, as we are asked to do now, that is, consider the effect of the enactment of chapter 283 of the Laws of 1937 on the power of the city to enact the ordinance in question.

In *Duplex Co. v. Deering,* 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, the court considered the validity of a labor injunction that had been issued by the federal district court. After that action for an injunction had been brought, but while the appeal was pending in the trial court, the act of October 15, 1914, known as the Clayton act, was passed by congress. This act modified somewhat the conditions under which labor injunctions might be allowed. The supreme court on this point held:

"The act of October 15, 1914, known as the Clayton act, insofar as it grants relief by injunction to private suitors, or affixes conditions and otherwise modifies the Sherman act, is applicable to a suit for an injunction pending at the time of its enactment." (Syl. ¶ 1.)

The case of *Amer. Foundries v. Tri-City Council,* 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, was also a labor injunction case. There the Clayton act was passed after the injunction had been granted and while the case was pending before the circuit court of appeals. In considering the point with which we are interested the supreme court said:

"The first question in the case is whether section 20 of the Clayton act, October 15, 1914, chapter 323, 38 Stat. 738, is to be applied in this case. The

act was passed while this case was pending in the circuit court of appeals. In *Duplex Printing Press Co. v. Deering,* 254 U. S. 443, 464, a suit to restrain a secondary boycott had been brought before the passage of the act, but did not come to hearing until after its passage. It was held that, because relief by injunction operates *in futuro* and the right to it must be determined as of the time of the hearing, section 20 of the act, relating to injunctions, was controlling insofar that decrees entered after its passage should conform to its provisions. The decree here appealed from in the district court had been entered before the Clayton act passed. But the whole cause was taken up by the appeal. The complainant had no vested right in the decree of the district court while it was subject to review. (*Rafferty v. Smith, Bell & Co.,* this day announced, post, 226.) The circuit court of appeals was called upon to approve or to change the decree and was obliged, therefore, to regard the new statute in its conclusion, and so are we." (p. 201.)

*Texas Co. v. Brown,* 258 U. S. 466, 42 S. Ct. 375, 66 L. Ed. 721, was an action to enjoin the enforcement of a state statute providing for the inspection of gasoline and oil brought into Georgia by plaintiff from another state. The district court enjoined the enforcement of the statute insofar as it related to the collection of inspection fees in respect to kerosene products brought into the state from other states and intended to be sold in the original package, but the injunction was denied as to products brought into the state for indefinite storage within the state or for sale after breaking the original package after completion of the interstate shipment. An appeal was taken directly to the supreme court. While the appeal was pending the legislature of the state passed an act amending the inspection act which the action had sought to enjoin. The supreme court said:

"In view of the provisions of this act we need spend no time in discussing whether the judges were right in following the rule of practical separability in administration, applied by this court to a taxing law single on its face in *Ratterman v. Western Union Telegraph Co.,* 127 U. S. 411, a case followed, since the decision below, in *Bowman v. Continental Oil Co.,* 256 U. S. 642. Any question whether the same or a different rule ought to be applied to an inspection law employed for the purpose of revenue taxation, based upon doubt as to the intent of the state legislature to permit the system to remain in force with respect to products stored within the state or sold in domestic commerce, when determined to be unenforceable as to the like goods while in interstate commerce, is set at rest by the new act, which under the circumstances must be accepted as manifesting an intent that the system shall remain in effect as to products that are subject to the taxing power of the state, as clearly as it declares a contrary purpose as to products still remaining in interstate commerce. Although passed after the decree below, this act must be given effect in deciding the appeal, since the case involves only relief by injunction, and this operates wholly *in futuro.* (*Duplex Printing Press Co. v. Deering,* 254 U. S. 443, 464.)" (p. 474.)

*Tulare Dist. v. Lindsay-Strathmore Dist.*, 3 Cal. 2d 489, 45 P. 2d 972, was a case where certain plaintiffs had brought suit to quiet their title to the surface and underground waters of the Kaweah delta. Judgment was entered in favor of the plaintiff, and defendant appealed. The basis of the judgment in favor of plaintiffs was that the riparian owner as against an appropriator was entitled to the full flow of the stream as it was wont to flow in a state of nature without diminution by the appropriator, or that between riparian owners and appropriators the riparian owner was not limited to a reasonable use. At the time the judgment was entered the above was the law. Subsequent to the rendering of the judgment the people of the state, by constitutional amendment, modified the long-standing riparian doctrine so that the rule of reasonable use between riparian owners and appropriators became the law. Under the new doctrine it was clear that when a riparian owner brought an action against an appropriator it was no longer sufficient to find that the plaintiffs were riparian owners and on the basis of such findings issue the injunction. It was then necessary for the trial court to determine whether the owners, considering all the needs of those in the water field, were putting the waters to any beneficial use. The court first considered whether a consideration of the constitutional amendment would require a different result than had been reached by the trial court. After deciding that a consideration of the statute would require a different result, the court said:

"In the class of appeal here presented, there should be and there is no question. The present action involves an appeal from an injunction decree, which, by its very nature, acts on the rights of these parties in the future. The very nature of the proceedings was to settle for all time the rights of these parties to the waters of the Kaweah delta. It would be an idle gesture to affirm this judgment in favor of the riparian respondents, because correct when rendered, with full knowledge and it is incorrect under existing law, and with full knowledge that under existing law the decree as rendered settles nothing so far as the future rights of these parties are concerned. For this reason, whatever may be the law applicable to appeals generally, the rule is well settled that on appeals involving injunction decrees, the law in effect when the appellate court renders its opinion must be applied." (p. 527.)

In the case of *State, ex rel., v. Abrahams*, 64 Wash. 621, 117 Pac. 501, the original opinion of the supreme court had been filed reversing the judgment of the trial court. While the case was pending on a motion for a rehearing a curative act was passed. The supreme court considered the effect of the new statute and affirmed the trial

court. (See 5 C. J. S., § 1841, p. 1310; also, *Shoe Co. v. Dawson*, 94 Kan. 668, 146 Pac. 996.)

We have concluded, therefore, that we should consider the question of whether the provisions of chapter 283 deprived cities in Kansas of the power to enact an ordinance such as was enacted by the city of Ottawa in this case.

The opinion in *Ash v. Gibson* based the conclusion that the city had authority to enact the ordinance in question upon the provisions of G. S. 1935, 14-401, 14-418, 14-421, 14-439, 12-848, 8-124, 8-125, 14-432 and 68-155. These statutes were set out in the original opinion and will not be included here. The opinion then referred to the constitutional amendment, known as the highway amendment, and the statutes enacted pursuant thereto. The argument was that by the adoption of the highway amendment and the enactment of statutes pursuant thereto the people had taken away from city governing bodies the power to enact ordinances of the sort in question. This court examined the statutes and held that this power had not been taken away. We held further that the enactment of the ordinance was a reasonable exercise of the police power of the city. As has been said, while the motion for a rehearing in this case was pending chapter 283 of the Laws of 1937 was enacted. We shall examine that chapter to ascertain whether it has taken away the power to enact the ordinance, which power we held the city governing body had by virtue of the statutes in effect prior to the enactment of chapter 283.

In the first place, it should be noted that chapter 283 expressly repealed G. S. 1935, 8-124. That section reads as follows:

"Cities of the first, second and third class shall have the power by local ordinance to regulate and control the use and speed of automobiles and motor vehicles within the corporate limits of said cities and to prescribe the penalties for the violation thereof; such ordinance not to be inconsistent or repugnant to the provisions of this act."

It should also be noted that chapter 283 did not repeal G. S. 1935, 8-125. That section is as follows:

"That the governing body of any city is hereby authorized to pass ordinances regulating the kind, size of tread, weight, and direction of travel of vehicles which may use any particular street, alley or other public property, and to prescribe routes by which vehicles of a weight of more than five thousand (5,000) pounds with or without load shall move through streets in said city, and prescribe suitable penalties for the violation thereof."

The argument is made that by failing to repeal G. S. 1935, 8-125, and repealing 8-124, the legislature intended to leave with the cities

the power conferred on them by 8-125, and this included the enactment of an ordinance such as we have here. We find, however, that a solution of our problem requires a careful examination of chapter 283.

This chapter was modeled largely upon act IV of the Uniform Vehicle Code. Its object is to provide a uniform regulation of vehicular traffic throughout the state. The first section consists of various definitions. Among those in which we are interested are the following:

"*Flammable liquid.* Any liquid which has a flash point of 70 degrees Fahrenheit, or less, as determined by a tabliabue or equivalent closed-cup test device.

"*Commissioner.* The commissioner of motor vehicles of this state.

"*Department.* The department of motor vehicles of this state acting directly or through its duly authorized officers and agents."

Section 7 is as follows:

"The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this act."

Section 8 enumerates various things which the chapter will not be construed to prevent cities from doing within the reasonable exercise of police power. The enactment of an ordinance such as we have here is not among these powers.

The chapter then contains provisions providing for the adoption of a sign manual by the highway commission and for local control of traffic under the supervision of the state highway commission. Without setting out all the provisions of the statute in this opinion it may be said that there are many provisions that obviously apply to city traffic. The chapter then provides in considerable detail for lights, both fore and rear, on trucks and passenger cars, and for other mechanical safety devices, and for inspection and regulation of such devices.

Section 109 provides as follows:

"Any person operating any vehicle transporting any explosive as a cargo or part of a cargo upon a highway shall at all times comply with the provisions of this section. (*a*) Said vehicle shall be marked or placarded on each side and the rear with the word 'explosives,' in letters not less than eight inches high, or there shall be displayed on the rear of such vehicle a red flag not less than twenty-four inches square marked with the word 'danger,' in white letters six inches high. (*b*) Every said vehicle shall be equipped with not less than two

fire extinguishers, filled and ready for immediate use, and placed at a convenient point on the vehicle so used. (c) The commissioner is hereby authorized and directed to promulgate such additional regulations governing the transportation of explosives and other dangerous articles by vehicles upon the highways as he shall deem advisable for the protection of the public."

It will be noted that this section confers on the commissioner of motor vehicles authority to promulgate such regulations governing the transportation of dangerous substances as he shall deem advisable for the safety of the public.

The chapter then provides in considerable detail for the height, length and width of vehicles.

Sections 119 and 120 provide for a maximum load for vehicles. The exact provisions of the sections as to maximum load are not important. Suffice it to say that the maximum load provided for in this section would permit much more than 600 gallons of gas to be transported. It would seem that a provision for a maximum load would imply that trucks might transport that heavy a load.

Some weight is added to this argument when we consider section 122 of the act. The first part of that section reads as follows:

"(a) The state highway commission with respect to highways under its jurisdiction, and local authorities with respect to highways under their jurisdiction may, in their discretion, upon application in writing and good cause being shown therefor, issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this act or otherwise not in conformity with the provisions of this act upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible."

It will be noted that this section confers on the state highway commission with respect to highways under its control, and upon local authorities with respect to highways under their control the power to permit a vehicle to exceed the load authorized by the provisions of section 120. With reference to this provision, it is argued that a provision conferring on these agencies the authority to increase the load authorized by the statute, but not conferring the authority to decrease it, is a good indication that the legislature did not intend local authorities to have power to enact an ordinance providing for a lighter load than is provided for in the statute.

So far, the sections of chapter 283 follow pretty closely the provisions of act V of the uniform act regulating traffic on highways, published by the Bureau of Public Roads. Subdivision (c) of section 123, however, contains a provision that was not in the uniform

act. To grasp the significance of this change it will be necessary to consider briefly the legislative history of this provision. As the bill was first introduced section 130 (c) provided as follows:

"(c) Local authorities with respect to highways under their jurisdiction may also, by ordinance or resolution, prohibit the operation of trucks or other commercial vehicles, or may impose limitations as' to the weight thereof, on designated highways, which prohibition and limitation shall be designated by appropriate signs placed on such highways."

When it was reported back to the senate by the committee on highways it was recommended that the bill be amended by striking out the above language and inserting in lieu thereof the following:

"Local authorities with respect to streets and highways under their jurisdiction shall by ordinance or resolution direct the operation of trucks or other commercial vehicles on designated streets and highways which shall be designated by appropriate signs placed on such streets and highways."

Due to other sections of the original bill being stricken out this section 130 (c) of the original bill became section 123 (c) of chapter 283. It is argued that this subsection recognized the right of local authorities to direct the operation of trucks and other commercial vehicles on any highway or street they might designate, as provided in G. S. 1935, 8-125, but withdrew the right of the cities of the state to forbid the use of all its streets to such vehicles. Some weight is given this argument by the fact that chapter 283 was considered by the legislature after this court had announced its decision in *Ash v. Gibson,* supra.

We must now refer to section 7 of chapter 283. That section has been set out heretofore in this opinion. A strong argument is made that this section requires a holding by this court that cities have only such power to enact traffic ordinances as is conferred by chapter 283. It is not necessary for us to go to such length in this case. Our question is whether the enactment of the ordinance in question is in conflict with the provisions of the act. By the enactment of chapter 283 the legislature evinced an intention to cover the field of traffic regulation throughout the state. The broad and general powers delegated by statute to municipalities to exercise control over streets are subject to the limitation that the ordinances must not be inconsistent with the laws of the state or in contravention of the declared policy of the state as found in its statutes. (See *Town of Randolph v. Gee,* 199 Ia. 181, 201 N. W. 567.) That was a case where a statute provided that no motor vehicle should operate over any highway with a gravel or paved surface which had projections of metal or wood

beyond the tread of traffic surface of the tire, excepting vehicles equipped with caterpillar tread, provided that tractors, traction engines or similar motor vehicles may be operated which have "V" shaped or diagonal cleats arranged in such a manner that two or more cleats are continuously in contact with the road surface, and that the weight per inch width of such cleats in continuous contact with the road surface measured in the direction of the movement of the vehicle does not exceed eight hundred pounds per inch width of tire.

Another section of the statute withheld from local authorities the right to make any rule in conflict with the provisions of the act. This section contained the following provisions:

" 'That the local authorities of any city, town, or city and county may impose additional restrictions to those herein contained applicable to vehicles exclusively used in the carrying of merchandise or articles of freight and of a capacity in excess of one ton in weight and may designate certain streets whereon heavy laden vehicles may be excluded. . . .' " (p. 183.)

The ordinance in question provided as follows:

" 'It shall be unlawful for any person to drive or operate any tractor or traction engine upon the oiled streets of the town of Randolph, Iowa, provided and excepted only, that it shall be necessary to make a crossing of an oiled street to reach the destination of said tractor or traction engine. And provided that no tractor or traction engine shall be driven or operated on any oiled street of the town of Randolph, Iowa, which has projections of metal beyond.' " (p. 181.)

It will be seen that the ordinance forbade tractors or traction engines being driven along the streets of the city. In holding the ordinance void the court said:

"It is plain that an ordinance which prohibits the use of all traction engines, no matter how equipped, and without regard to weight, upon streets not improved with gravel or pavement, not only contravenes a declared policy of the state as found in its legislation, but is in direct conflict with, and in violation of, the express provisions of the statute." (p. 183.)

In this case the ordinance forbids the transportation of gasoline in larger amounts than 600 gallons, and does not make any pretense of providing upon what streets trucks loaded with gasoline might move through the city. It will be seen that the practical effect of a holding that the ordinance in this case is valid would be to render meaningless the provisions of 123 (c) of chapter 283 as far as gasoline trucks are concerned.

*State v. Robinson*, 87 W. Va. 374, 104 S. E. 473, was a case where the city ordinance was as follows:

"No motor or other vehicle, which, with its load, weighs in excess of fifteen tons, and no motor or other vehicle, bearing in excess of six hundred pounds per inch width of tire, shall be operated or permitted to be operated upon any of the streets, alleys and avenues of the city of Wheeling; except by special permit of the city manager and then only conditioned that the owner thereof shall pay to the city any and all damage that may result from the operation of such vehicle to such streets, alleys and avenues." (p. 375.)

Defendant drove a truck loaded with coal exceeding the maximum provided in the ordinance. He was arrested. The defendant sought a writ of prohibition to prevent the police judge from trying him. The argument was that the legislature of the state had covered the subject matter of the ordinance in a general law; that the ordinance was in conflict with the statutes and was therefore void. The statute was general in its provisions as to control over vehicular traffic. It was about such a statute as the one we are considering. One of its provisions was for a maximum load weight for vehicle. This maximum was greater than the limit provided in the ordinance. The court said:

"How can there be any doubt about the purpose of the legislature to commit to the state road commission the entire subject of regulating the weight of and the permits and privilege taxes imposed for operating motor vehicles, not only upon the county roads, but upon the streets and alleys of municipalities?" (p. 381.)

The legislature of this state has gone much farther in the enactment of chapter 283 than the legislature of West Virginia did in the above case. The only distinction is that in our case the restriction as to size of load is placed on gasoline only by the ordinance, while in *State v. Robinson,* supra, the restriction went to all vehicles. It must be noted in this connection that the commissioner of motor vehicles is given authority in chapter 283 to promulgate such additional regulations governing the transportation of dangerous articles by vehicles upon the highway as he shall deem advisable for the protection of the public.

We cannot fail to consider the immense traffic in gasoline moving along our highways and necessarily through our cities. The legislature must have considered this when enacting chapter 283. When all the provisions of chapter 283 are considered, that is, the definition of the word "highway," the setting out of certain powers reserved to the cities, the including in the act of certain provisions that must of necessity apply to city traffic, conferring on the vehicle commissioner the authority to make additional regulations covering trans-

portation of dangerous articles which must include gasoline, the fixing of a maximum weight for vehicles, the conferring on local authorities the power to increase this maximum, the withholding of power to decrease it, and finally the provision that city authorities "shall . . . direct the operation of . . . commercial vehicles on designated streets," we are led to the conclusion that the legislature, by the enactment of chapter 283, covered the matter dealt with in the ordinance. Therefore, the power of the city to enact the ordinance in question as held by this court in *Ash v. Gibson*, 145 Kan. 825, was withdrawn by the enactment of chapter 283 of the Laws of 1937. It follows that the ordinance must be held to have been abrogated and superseded by the statute.

The statement of the law as to the power of the city to enact the ordinance in question at the time it was enacted as expressed in *Ash v. Gibson* is adhered to. The judgment of the trial court holding the ordinance void is modified in accordance with the views expressed herein.

ALLEN, J., concurs in the conclusion reached and in the judgment of affirmance.