No. 38,478

Dairy Belle, Inc., a corporation, *Appellant*, v. Roy Freeland, Secretary of Agriculture of the State of Kansas, and H. E. Dodge, Dairy Commissioner of the State of Kansas, *Appellees.*

(264 P. 2d 894)

Opinion filed December 12, 1953.

W. A. *Kahrs*, of Wichita, argued the cause, and *Robert H. Nelson, Clarence N. Holeman,* and *Keith L. Wallis,* all of Wichita, and *James W. Porter,* of Topeka, and *Hugo Swan,* of Dallas, Texas, were with him on the briefs for the appellant.

*Warden L. Noe,* special assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the appellees, Freeland and Dodge; *Dale M. Bryant,* of Wichita, and *Charles M. Fistere,* Washington, D. C., were on the briefs for appellees, Gardiner Dairy and Ice Cream Co., Garden City, Puritan Dairy Products Co., Pittsburg, Jo-Mar Dairies Co., Salina, and Ambrose Creamery Company, Norton; *P. K. Smith* and *LeRoy Warner,* both of Wichita, and *Balfour S. Jeffrey,* of Topeka, were on the briefs for appellee, Armstrong Creamery Co., Wichita; *Otis Allen,* of Topeka, was on the briefs for the appellee, Shawnee County Milk Producers Association.

*Leonard A. Flansburg* and *Charles H. Flansburg,* both of Lincoln, were on the briefs as *amici curiae.*

The opinion of the court was delivered by

Smith, J.: This appeal was originally submitted on November 3, 1952. The questions involved were a construction and the con-

stitutionality of G. S. 1949, 65-720 and 721. Before this appeal was decided the legislature at the session for 1953 enacted house bill 458. This is now chapter 8, Laws of 1953. This chapter dealt with the same or similar subject matter as G. S. 1949, 65-720 and 721 and contained a provision that it should be supplemental to existing statutes and should not be deemed as repealing any section of the dairy law of the state. The relief for which plaintiff had asked was an injunction to enjoin public officers from enforcing a statute and any judgment in favor of plaintiff would operate *in futuro*. We decided, therefore, to have the benefit of briefs and arguments from counsel on the effect, if any, to be given chapter 8, Laws of 1953, and the constitutionality of that act. (See *Ash v. Gibson*, 146 Kan. 756, 74 P. 2d 136.) The appeal was on May 14, 1953, reset for argument on November 2, 1953, on the effect to be given the above chapter. Briefs were filed and oral arguments were had on that day. The appeal has now been finally submitted on the question of the construction and constitutionality of G. S. 1949, 65-720 and 721, and the effect to be given chapter 8, Laws of 1953, under all the surrounding facts and circumstances. Although our order of May 14, 1953, ordered argument on the effect to be given chapter 8, Laws of 1953, counsel have argued also the question of the constitutionality of that chapter. We shall consider both questions as well as the questions formerly submitted.

After alleging the incorporation of plaintiff and the identity and official capacity of the defendants, the petition alleged it was the duty of the defendants to enforce the laws of the state with reference to dairy products, particularly subsection 2 of paragraph F of section 65-707 of the General Statutes of Kansas, 1935, now G. S. 1949, 65-707, and were required to enforce the provisions of subsections 3 and 4 of section 65-708 of the General Statutes of 1935, as amended and effective July 1, 1949, being now G. S. 1949, 65-720 and 65-721, and concieved it to be their duty to enforce these statutes against plaintiff in the sale of its product. The petition then alleged that plaintiff was engaged in the sale of an article of food to the general public known as "SOYA Frozen Dessert" which contained 38.3 percent total solids, as follows:

| "Vegetable soy bean fat | 10% |
|---|---|
| Serum solids | |
| (milk solids, not milk fat) | 13% |
| Sugar | 15% |
| Stabilizer | .3%" |

The petition then alleged that the solids were thereafter frozen and sold in waxed containers with a full description of the container and no fraud was practiced. The petition then alleged that defendant Dodge had notified plaintiff that the sale of "SOYA Frozen Dessert" was a violation of law and had threatened the withdrawal of manufacturing license of the manufacturer of the product; that because of these threats plaintiff was unable to create new customers and would sustain damages thereby and there was a profitable market for the product of which the plaintiff could not avail itself unless the court should declare its sale not in violation of law. The petition then alleged that on account of the acts of defendants it was being deprived of its constitutional right to do business in the state and would be caused damage for which it had no adequate remedy at law. The petition then alleged it was informed defendants in their official capacity ruled the sale of "SOYA Frozen Dessert" constituted a violation of the law because it was semblance of ice cream and contained soybean fat mixed with milk solids. The petition then alleged "SOYA Frozen Dessert" was not prohibited by law and if the statutes did prohibit its sale the acts were unconstitutional and void because they would deprive plaintiff of its property without due process of law, were in violation of the fifth amendment to the constitution of the United States, of section 1 of the fourteenth amendment and of paragraph 1 of the constitution of the state, because the acts would be discriminatory and an unreasonable classification, because it was prohibitive and not regulatory and prevented the carrying on of a legal trade and business, because it was arbitrary and unreasonable interference with private business and was an abuse of the police power of the state since there was nothing in plaintiff's product injurious to the health, safety, morals or welfare of the public, because the acts referred to created unnecessary restraint of trade, created class legislation, since there was no unreasonable basis for the classification, because the legislature had no power to make the performance of an innocent act a criminal one when in fact the public health and welfare was not in danger, because the law would make an unjust and unreasonable classification and discriminated between product and business and was, therefore, class legislation and unconstitutional and void.

The prayer was that the defendants be enjoined from attempting to enforce the provisions of G. S. 1935, subsection 2 of paragraph F of 65-707, and subsections 3 and 4 of G. S. 1935, 65-708, as amended

by house bill 406 of the legislature of 1949, now G. S. 1949, 65-720 and 721, and from attempting to prohibit the sale of "SOYA Frozen Dessert" or from threatening arrest or prosecution of plaintiff and its agents; and that the court determine that the statutes do not prevent the manufacture and sale of it, and that if the statutes do prevent such manufacture and sale, then such statutes be held unconstitutional and void and that pending the final decision a temporary injunction be issued.

Soon after the filing of the action a temporary restraining order was issued.

The answer of defendants Freeland and Dodge admitted the incorporation of plaintiff and the identity of the defendants and that plaintiff was engaged in the sale to the general public of the product known at that time as "SOYA Frozen Creme." The answer then alleged that the product was a frozen product made in the semblance of ice cream but containing less than ten percent of milk fat and fell within the classification of "ice milk," as defined by chapter 330 of the Laws of Kansas of 1949, now G. S. 1949, 65-720 and 721; that it contained fats other than milk fat in a substantial quantity and was an adulterated product within the meaning of that chapter; that it was offered for sale in violation of these statutes. The answer then contained the following allegation:

"8. That in the manufacture of the ordinary ice milk of commerce, containing a substantial amount of milk fat, consumers perceive a richness of product associated with cream; whereas, in the case of the aforesaid soya frozen creme, containing a vegetable oil in substitution for cream, a false and deceptive impression that milk fat is present is created in the mind of the consumers.

"9. In the manufacture of ice milk in compliance with the requirements of the statute, and where milk fat is used, it is found that a significant proportion of milk fat is necessary to render the product palatable and acceptable to the consumers; that the ice milk manufactured in Kansas customarily contains a substantial amount of milk fat; that the plaintiff's product is made in semblance of ice cream and in semblance of ice milk, having a milk content; and that the ordinary consumer is unable to distinguish by odor, taste, appearance, or consistency a product made with milk fat from those made with the cheaper, inferior and subsituted soy bean or other vegetable oils, by reason of the fact that such oils give the impression of richness, which gives opportunity and temptation for deception, which the statutes were intended to prohibit.

"10. That the product is such that it may and is readily sold to the consumer and accepted by him with the belief on his part that it is ice milk made in part from cream, or that it is ice cream, when as a matter of fact, by reason of the substitution of other oils than milk fats, the product is deficient in

certain nutritional qualities and is not of equal nutritional value with ice milk made with the milk fat content."

The answer then contained a statement that the package containing it was the same shape and coloration as the package used for ice cream and it was susceptible of being sold as ice milk made in part from cream with the result that its sale offers an opportunity for fraud and deception and the public was deceived thereby; that the plaintiff even though its product falls within the statute as "ice milk" even though adulterated had not been placed upon the containers in which it was sold a label of "ice milk" and its failure so to do was a violation of law. The answer then alleged that plaintiff supplied establishments with its product with the knowledge that they sold it without posting a notice that "ice milk" is sold here. The answer then contained an allegation as follows:

"15. That the statutes hereinbefore cited were enacted to prohibit fraud, deception, and confusion and to protect the public health by preventing the substitution of inferior fats for milk fats, and were clearly within the legislative power; that such statutes are valid and constitutional."

Some four dairy and ice cream companies were permitted to intervene and filed answers substantially as the one just set out.

At the trial there was an extended hearing. The trial court made findings of fact and conclusions of law after the formal ones as follows:

"3. Defendants notified the officers of the plaintiff corporation that the sale and manufacture of Soya Frozen Dessert is in violation of law. Defendants threatened prosecution of plaintiff's company and the withdrawal of the manufacturer's license for the manufacture of said product.

"4. Soya Frozen Dessert was admitted by the parties in pre-trial conference to be 'non-toxic.'

"5. Soya Frozen Dessert is a frozen product made of the following ingredients:

| "Vegetable soy bean fat | 11% |
| Powdered skim milk | 10½% |
| Sugar | 16% |
| Stabilizer | 3/10 of 1% |
| Powdered Egg Yolk | 6/10 of 1% |
| Total Solids | 38 4/10% |

"6. Soya Frozen Dessert is wholesome, edible, and fit for human consumption. It is produced in the following flavors: vanilla, chocolate and strawberry. The method of manufacture is the same as that for ice cream, with the same equipment used.

"7. Plaintiff's product, Soya Frozen Dessert, is sold to retail trade and only in pint cartons, plainly marked 'Soya Frozen Dessert.' It is not sold as a

substitute for any other product. It is a product sold in its final form, ready for consumption when packed in the carton. It is not sold in bulk.

"8. There is no fraud or deception in the sale of the product.

"9. Soya Frozen Dessert is made 'in semblance of ice cream.' Most of the samples show less than ten per cent (10%) milk fat. Ordinary consumers are unable to distinguish it, by appearance, odor, consistency and taste from ice cream made with milk fat.

"10. The cost of hydrogenated soya fat is twenty-two cents per pound as compared to seventy-seven cents per pound for butter fat.

"11. A controversy exists between the plaintiff and defendant as to plaintiff's right to sell its product, Soya Frozen Dessert; to enter into contracts for the manufacture of the product, and for the sale of the same by others under franchise with the plaintiff. There is a market for said product within the state of Kansas of which plaintiff cannot avail itself because of threats of prosecution made by the defendants.

"12. No findings or conclusions are necessary as to a violation of the Kansas Filled Milk Statute, Section 65-707 (F) (2) G. S. 1935, because defendants abandoned that contention.

"Conclusions of Law

"1. Soya Frozen Dessert is a product prohibited by the Ice Milk Statute (S. L. 1949, Ch. 330, p. 567, Sec. 3) and therefore controlled by it.

"2. The Ice Milk Statute, G. S. 1935, 65-708, as amended by Session Laws 1949, Ch. 330, page 567, does not violate Article II, Sec. 16 of the Kansas Constitution.

"3. The temporary injunction heretofore granted by this court is now dissolved.

"4. Defendants should have judgment for their costs."

The plaintiff's motion for an order vacating the judgment to set aside findings of fact and conclusions of law and for a new trial was overruled, also the motion of defendants and intervenors to strike Finding No. 8 and for an additional finding that

"The plaintiff's product 'Soya Frozen Dessert' is susceptible of confusion and deception and of being sold as and for ice cream and ice milk and is itself an instrument of fraud. The labeling of plaintiff's product is not sufficient to prevent fraud and deception upon the consuming public."

The plaintiff was given permission to amend its petition to challenge the constitutionality of the act because of its title. Judgment was entered in accordance with the findings of fact and conclusions of law.

The dairy commissioner argues plaintiff is violating G. S. 1949, 65-720. It provides as follows:

" 'Ice milk' defined; labeling; sale for immediate consumption, notice. Ice milk means and includes a frozen product or semifrozen product made in semblance of ice cream, but containing less than ten percent (10%) milk fat.

Ice milk shall not contain any fats, oils or paraffins other than the milk fat. Ice milk shall not be sold in packages, cans or wrappers, unless the containers are plainly labeled in legible eight point type, with the words, 'Ice Milk.' Ice milk shall not be sold for immediate consumption in business establishments, unless there is posted in a conspicuous place on the premises a card showing in two-inch type the following: 'Ice Milk Is Sold Here,' or unless such wording appears prominently on the menu with type no smaller than the largest type appearing thereon. (L. 1949, ch. 330; § 3; June 30.)"

The penalty section is G. S. 1949, 65-721. It provides as follows:

"*Same; penalty.* It shall be unlawful to offer for sale or sell any ice milk which does not conform to the definition and standard therefor as set forth in this act. Any person who violates any provision of this act, for which a penalty is not otherwise provided shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than twenty-five dollars ($25) nor more than two hundred dollars ($200) for each offense. (L. 1949, ch. 330, § 4; June 30.)"

Plaintiff's product is a frozen dessert made of vegetable oil 11 percent, powdered skim milk 10½ percent, sugar 16 percent, stabilizer 3/10 of 1 percent, powdered egg yolk 6/10 of 1 percent and 62 percent water. Defendants in the former appeal argued that the product of plaintiff violated the above statute in that it was made in the semblance of ice cream, that is, it looked and tasted like ice cream and yet it had vegetable oil added (in this case soybean oil) and it contained less than 10 percent milk fat. The theory of the statute is that ice cream must contain at least 10 percent milk fat and any product that contains less than that much milk fat and looks and tastes like ice cream is "ice milk." The turning point in the case is, that this product is in the semblance of, that is, it looks and tastes like ice cream, yet has no milk fat and has soybean oil added.

The plaintiff argues first that its product was not prohibited by the statute quoted; and second, if the statute be construed to prohibit the sale of "Soya Frozen Dessert" it was unconstitutional. It argues also that G. S. 1949, 65-720 and 65-721, violates article 2, section 16, of the constitution of the State.

Plaintiff argues first that neither statute applies to its product. Its argument is the statutes merely define ice milk as a product containing less than ten percent of milk fat, that is, it is a statute of definition rather than of prohibition. We must concede the statute is not as artfully drawn as it might have been. However, we have no difficulty in reaching a conclusion the legislature intended to provide and actually did provide that no product which looked and tasted like ice cream and had vegetabe oil added could be sold in Kansas. The legislature said ice milk should not contain any vege-

table fats. Plaintiff argues that its product is not ice milk—hence the statute does not prohibit it from being sold even though it contains vegetable fats. It is, however, made in the semblance of ice cream and does contain less than ten percent butterfat. If we forget about the name "ice milk" for a moment we have no difficulty in concluding that both statutes provide a product made in the semblance of ice milk and containing less than ten percent butterfat cannot be sold if it contains vegetable oil.

After a consideration of the briefs and final submission of this appeal on November 2, 1953, we have concluded that while the later enactment, that is, chapter 8, Laws of 1953, is more sweeping in its scope as applied to dairy products generally, still it by its terms is supplemental to the former statute. This appeal may very well be decided upon a consideration of G. S. 1949, 65-720 and 65-721, and its validity.

We go now to a consideration of the question of whether these two sections violate the constitution. The questions may be stated in the words of counsel for plaintiff as well as any other. He says:

"It is conceded that the Legislature has authority by a Legislative enactment to prohibit the sale of any product to the consuming public if such Legislation is necessary (a) to preserve the public health and (b) to prevent fraud and deception in the sale thereof to the consumers, *State vs. The Sage Stores Company*, 157 Kan. 404. But the Legislature cannot arbitrarily prohibit the sale of a wholesome product where the public health is not affected and when such product is being sold without deception and fraud as in the case at bar."

Counsel relies on the finding of the trial court that there is no fraud in the sale of this particular product and that it is wholesome, edible and fit for human consumption.

Plaintiff concedes the legislature has authority to prohibit the sale of any product if such legislation is necessary to preserve the public health and to prevent fraud and deception in the sale of such product to consumers. There is in this record no argument or findings as to health. The outcome of the case rests on the fraud feature.

It must be conceded the trial court found there was no fraud in the sale of this particular product. The problem is not quite that simple, however. If it is such a product as to be readily susceptible of being sold fraudently, then the legislature has power to prohibit its sale.

While this case is not controlled under the facts by *State, ex rel., v. Sage Stores Co.,* 157 Kan. 404, 141 P. 2d 655, it is controlled by it in principle. That was a quo warranto action to challenge the legality

of the sale of a product known as milnot. It was a milk product to which vegetable oil had been added. G. S. 1949, 65-707, known as the "filled milk statute" prohibited the sale of such a product. Where the situation in that case differs from this on the facts is that "milnot" was a liquid product and "SOYA Frozen Dessert" is a frozen one. The statute prohibited the sale of either one where vegetable fats had been added. There was a health question in that case also. We appointed a commissioner who took evidence and made findings of fact and conclusions of law. One of the questions was the constitutionality of the statute. On that we said:

"For the purpose of determining the constitutionality of the law in question it is immaterial whether we believe defendant's product when considered as a whole is inferior, equal or superior to whole milk or exaporated (sic) whole milk if substantial disagreement in fact exists with respect to the inferiority of the product as compared with whole milk or evaporated whole milk, and the legislature has some basis for believing a filled-milk product is likely to be sold or is susceptible of being sold as and for whole milk or evaporated whole milk with the result that the public may be deceived thereby. In other words, in the view we take of the law governing this case the sale of a filled-milk product, although wholesome and nutritious, may be constitutionally prohibited as well as merely regulated if the legislature has some basis for believing the product is inferior to whole milk or evaporated whole milk and that the sale of the product offers an opportunity for fraud and deception and that prohibition rather than mere regulation of its sale is necessary for the adequate protection of the public health or general welfare. We think there was a sufficient basis for the exercise of legislative judgment as to a filled-milk product and the remedy adopted to effect the legislative purpose."

There was a health feature in that case. Each time, however, the question of power of the legislature to enact such legislation was discussed it was said it could be done to prevent fraud as well as to preserve health.

For instance in conclusion of Law No. 1 the commissioner said:

"The statute in question (G. S. 1941 Supp. 65-707 (F) (2) has a two-fold purpose: (1) Preservation of the public health, and (2) prevention of fraud and deception on the consumers of the state."

Also conclusion No. 3

"If the character or effect of an article, as intended to be used, be debatable, the legislature is entitled to its own judgment, . . ."

Also conclusion No. 6

"Whether the purposes of the statute may be attained by regulation or whether absolute prohibition is necessary are questions for the legislature."

All these conclusions of law were set out and approved by us in the opinion.

Our judgment was appealed to the Supreme Court of the United States. (See *Sage Stores Co. v. Kansas*, 323 U. S. 32, 65 S. Ct. 9, 89 L. Ed. 25.) The supreme court pointed out that a writ of certiorari was granted to examine a single issue, that is, whether the Kansas statute was an arbitrary, unreasonable and discriminatory interference with petitioner's rights of liberty and property in violation of due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution.

After discussing the health feature of the record the court said:

"It was also determined by the commissioner and approved by the court that one purpose of the legislature was the prevention of fraud and deception in the sale of these compounds. *State v. Sage Stores Co.*, 157 Kan. 404, 412-13.

"As a consequence of this evidence, findings of fact and conclusions of law, the rational basis for the action of the legislature in prohibiting the sale, or keeping for sale, of the compounds is even more definite and clear than in *Carolene Products Co. v. United States*, ante, p. 18. Since petitioners' products had the taste, consistency, color and appearance of whole milk products, we need not consider the validiy of the Kansas act as applied to compounds which are readily distinguishable from whole milk compounds. Reference is made to part "Third" of the *Carolene* opinion for a discussion as to whether or not a prohibition of these products violates due process."

This was a companion case of *Carolene Products Co. v. U. S.*, 323 U. S. 18, 65 S. Ct. 1, 89 L. Ed. 15. There the court considered the validity of a federal filled milk statute similar to our state statute. On the question we are considering the court said:

"The reports show that it was disputable as to whether wholesome filled milk should be excluded from commerce because of the danger of its confusion with the condensed or evaporated natural product or whether regulation would be sufficient. The power was in Congress to decide its own course. We need look no further."

But little would be added to the force of this opinion by setting out or quoting from other opinions. The authorities are well discussed in the above opinions.

The judgment of the trial court is affirmed.

WEDELL, J. (concurring specially): My views concerning the unconstitutionality of a statute similar in purpose to the one now under consideration are contained in my dissenting opinion in *State, ex rel., v. Sage Stores Co.*, 157 Kan. 404, 419, 141 P. 2d 655. The supreme court of the United States rejected those views in *Sage Stores Co. v. Kansas*, 323 U. S. 32, 89 L. ed. 25, 65 S. Ct. 9.

It appears to me the last-mentioned decision, in principle, is con-

trolling in the instant case. Personally, I adhere to the views expressed in my former dissent and for the reasons therein stated. However, as a member of this court, I am bound by the decision of the supreme court of the United States on the question of constitutionality of the law. For that reason I am obliged to concur in the instant decision.

SMITH and WERTZ, JJ., join in the foregoing concurring opinion.