No. 41,630

CARROLL D. SCHULTE, *Appellant*, v. THE CITY OF GARNETT: Earl Snyder, Mayor; Clinton S. Wilson, Commissioner; Robert D. Garrett, Commissioner; Harley Gibson, Jr., Clerk; Clark Howerton, Attorney, *Appellees*.

(348 P. 2d 629)

Opinion filed January 23, 1960.

*Gwinn G. Shell*, of Garnett, argued the cause and was on the briefs for the appellant.

*Wayne Loughridge*, of Garnett, argued the cause, and *Clark Howerton*, of Garnett, was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This appeal is from the judgment and order of the trial court denying injunctive relief and overruling plaintiff's motion for new trial.

Plaintiff owned lots ten and eleven in block fifty in the city of Garnett. He entered into a contract with Anderson-Prichard Oil Corporation for sale of these lots for $10,500. A service station was to be constructed thereon and a condition of the contract required of plaintiff was:

"(*b*) The furnishing to Buyer of satisfactory evidence that the above described land has been zoned for the business of a motor vehicle service station; and that a building permit for a service station may be obtained. . . ."

The trial court's findings reflect these salient facts:

Plaintiff's lots are located at the northeast corner of the intersection of north and south U. S. highway 59 and east and west Fifth Avenue, which comes to a dead end at the east edge of the highway across from the mid-section of the Anderson county hospital. Immediately north of plaintiff's property is a service station which goes to the intersection of the highway and Fourth Avenue. Two more stations are on the northeast and northwest corners of that intersection and there is a residence at the southwest corner. Highway 59 is a standard two-lane highway carrying the usual amount of traffic. From a map exhibit there appear to be a number of business and industrial locations north of Fourth Avenue along both sides of the highway.

In 1929 the city of Garnett passed ordinance No. 1041 which in substance prohibited a service station in that city north of Eighth Avenue, except for certain lots in certain blocks among which plaintiff's property was not included, and a proviso clause therein read, ". . . that upon a petition signed by all of the resident owners of property within two hundred and fifty feet of a proposed location . . . the mayor and commissioners may grant a special permit to any person . . ." to conduct such a service station business upon the property

The trial court concluded as a matter of law that under G. S. 1949, 12-707, the governing body could enact a zoning ordinance dividing a city into zones or districts and regulate and restrict the location of trades, industries, and uses of the land within such district; that plaintiff had not shown the ordinance was unreasonable as to his property; the provision as to consent of all property owners within 250 feet did not make the ordinance void; the trial court construed "may grant" to mean "shall grant" and presumed the governing body would comply with G. S. 1949, 12-708 in considering any change in districts or zones created by the ordinance; as applied to plaintiff's property and its proximity to the hospital, the restrictions of the ordinance were within the police power conferred on the city by statute for the safety, health, and general welfare of its people, citing *Service Oil Co. v. City of Marysville*, 117 Kan. 514, 231 Pac. 1031, 43 A. L. R. 854; *Ash v. Gibson*, 145 Kan. 825, 835, 67 P. 2d 1101; *Ash v. Gibson*, 146 Kan. 756, 767, 74 P. 2d 136.

The city relies on *Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99, a good case on zoning ordinances which divided the city into five districts providing necessary commercial locations to serve each particular residential neighborhood, but we see no similarity between the Ware case and our present one. The Service Oil Company case and the two Ash cases cited above are relied upon by the city and were set out in the trial court's legal conclusion. The first (*Service Oil Co. v. City of Marysville,* supra) which we shall later discuss herein, is readily distinguishable from the case at bar. In the first Ash case, this court held that an ordinance of the city of Ottawa limiting truck loads of gasoline to 600 gallons was not unreasonable, discriminatory nor arbitrary. Injunctive relief was thereby denied to operators of trucks with tank capacities of 2,000 to 5,000 gallons. Before a petition for rehearing was ruled upon in the Ash case, the legislature, by statutory enactment, removed the authority of the city of Ottawa to enact the ordinance in question and thereby abrogated the ordinance, as narrated in the second Ash case. Rules of law applicable in the Ash cases cannot, as a matter of course, be applied here because, as will be shown, the city ordinance in our present case in no way resembles the ordinance in the Ash cases, or those of any of the other cases relied upon by the city.

The opinion in *Service Oil Co. v. City of Marysville,* supra, clearly points out one of the fatal defects of the ordinance now under consideration by making the following distinction:

"The ordinance does not *prohibit* the use of the plaintiff's lot for storing oil and gasoline; it *regulates* the manner of storage by requiring that the tanks shall be placed underground. It leaves nothing to the discretion or choice of the council. It therefore is not within the rule that even a legislature may not require a permit from some officer, who may refuse or grant it at his pleasure, for the doing of an otherwise lawful act. (*Smith v. Hosford,* 106 Kan. 363, 187 Pac. 685; *Julian v. Oil Co.,* 112 Kan. 671, 212 Pac. 884.) Even where an ordinance in terms merely says that a certain thing shall not be done without a permit from a designated officer, it is often interpreted as meaning that the officer is to grant the permit unless in his honest judgment reasonably exercised the interest of the public will thereby be put in jeopardy, a construction rendering it unobjectionable on constitutional grounds." (Our emphasis.) (p. 516.)

The more recent case of *Hudson Properties, Inc., v. City of Westwood,* 181 Kan. 320, 321, 310 P. 2d 936, cited with approval the Smith and Julian cases included in the above quotation, and held a zoning ordinance of the city of Westwood was invalid because it

failed to establish a uniform standard for its application and attempted to give the governing body of the city arbitrary power.

No other conclusion can be reached herein than to hold this ordinance is invalid for the reason it places plaintiff and the use of his property for service station purposes at the mercy—of not only the mayor and city commissioners—but also the residential property owners within 250 feet who by opinion, whim or caprice may refuse to sign his petition. Far-reaching results of such delegation of power are apparent when we consider the testimony of a witness in this case who was an indispensable signer to plaintiff's petition. The witness stated he had been in favor of the filling station immediately adjacent to the plaintiff's location and had signed a petition permitting its construction because, in his opinion, a modern filling station would be more attractive than the then existing run-down dwelling on the location. However, the same witness testified he thought there were "now" enough filling stations and "young people or high school students" racing in and out of driveways would make another one undesirable. (*Quality Oil Co. v. du Pont & Co.*, 182 Kan. 488, 496, 322 P. 2d 731.)

The trial court erred in failing to grant plaintiff the injunctive relief he sought. In view of this, it is unnecessary to go into other questions raised by the parties.

Judgment reversed.