No. 20,070.

THE CITY OF KANSAS CITY, KANSAS, *Appellee*, v. JOHN HENRE, *Appellant*.

### SYLLABUS BY THE COURT.

CITY ORDINANCE—*Sale of Milk—Penalties Exceed Statutory Penalties for Same Offense—Ordinance Legal.* A city ordinance passed in pursuance of legislative authority to make regulations to secure the health of the city which fixed a higher standard of food value in the milk sold within the city than is provided in statutory regulations as to the sale of milk throughout the state and which imposed a more severe penalty for the violation of the ordinance than is annexed by the legislature for the violation of the statute on the same subject is not repugnant to the laws of the state, unreasonable nor invalid.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed December 11, 1915. Affirmed.

*George W. Littick, Guy E. Stanley,* and *Arthur J. Stanley,* all of Kansas City, for the appellant.

*Richard J. Higgins, W. H. McCamish,* and *Lee Judy,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   The only question presented in this appeal is, Has a municipal corporation power to pass an ordinance providing a different and higher standard for milk sold or kept for sale in a city than is provided in a state regulation, and to fix a greater penalty for the violation thereof than the penalty prescribed for a violation of the state law?

In a complaint filed in the police court of the city of Kansas City on July 15, 1914, John Henre was charged with having sold and delivered milk "which milk contained less than twelve per cent of milk solids, and which contained less than three and one-fourth per cent of butter fat in violation of section No. 3 of ordinance No. 4375 of the ordinances of said city of Kansas City."

On an appeal to the district court defendant moved to quash the complaint because it did not state an offense and because the ordinance was in violation of a state law and void, but he was overruled.   He was found guilty, and overruling his motion in arrest of judgment the court sentenced him to pay a fine of $100.   He appeals.

The state law provides against the selling, keeping for sale or offering for sale adulterated or misbranded articles of food, drug or liquor and fixes a penalty of $50 for each violation, or imprisonment in the county jail not exceeding one year, or both fine and imprisonment.   (Gen. Stat. 1909, § 3076.)   It also gives the state board of health power to make and publish uniform rules and regulations fixing food and drug standards and provides a penalty of $50 for violation of such rules and regulations or imprisonment for six months, or both, in the discretion of the court.   (Gen. Stat. 1909, § 3077.)   The state board of health has published as the standard for milk that:

"Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more healthy cows, properly fed and kept, excluding that obtained within fifteen days before and five days after calving, and contains not less than eight and one-half (8.5) per cent of solids not fat, and not less than three and one-quarter (3.25) per cent of milk fat, and contains no preservative, added water, or other foreign substance." (Kansas State Board of Health Regulation No. 35, subdiv. B. (a.-1.).)

The city ordinance provided:

"SECTION 2.   No milk or cream shall be sold, kept for sale, offered for sale, or delivered within said city, which is taken from cows within

fifteen (15) days before or *ten* (10) days after parturition, nor shall any such milk or cream be mixed with any milk or cream for the purpose of sale.

"SECTION 3. No milk shall be sold, kept for sale, or offered for sale or delivered within said city, which contains less than *twelve* (12) per cent. of milk solids or which contains less than three and one-fourth (3¼) per cent. of butter fats, etc.

"SECTION 14. That any person, firm or corporation who shall violate any of the provisions or requirements of this ordinance, shall be deemed guilty of a misdemeanor, and shall be upon conviction, punished by a fine of not less than Ten ($10.00) Dollars nor more than One Hundred ($100.00) Dollars for the first offense, and for a *second or any subsequent conviction, shall be punished by a fine of not less than Fifty ($50.00) Dollars nor more than Five Hundred ($500.00) Dollars.*"

This ordinance was enacted and became effective July 11, 1908. Its validity is attacked on the ground that it is in excess of the power granted to the city and that it conflicts with a state regulation upon the same subject. As has been seen, the city fixes a higher standard of food value than does the state in that it provides that the milk sold shall contain twelve per cent of milk solids while the state provides for eleven and three-fourths, and the proportion of butter fat required is the same in both. The difference in the standards fixed is not great but it is substantial, and the question arises whether the city can prescribe higher standards and greater restrictions in the sale of milk than the state prescribes and may impose a more severe penalty for the violation of the ordinance than is annexed by the state for a violation of the statute. The power of the city in this respect is derived from the state and is only such as is clearly conferred by statute. Kansas City has adopted the commission form of government and the legislature has authorized such cities to enact ordinances for all named purposes not repugnant to the constitution and laws of the state. One of the purposes specifically named is to make regulations to secure the general health of the city. (Gen. Stat. 1909, §§ 1243, 1278.) The ordinance regulating the sale of milk comes clearly within the power so conferred, and unless it conflicts with the statutes or constitution or is clearly unreasonable it must be upheld. It is well settled in this state that where power is conferred upon cities to enact ordinances for the preservation of peace and good order within the city or for the preservation of the health of its inhabitants

it may be exercised although the legislature has provided state regulations on the same subjects. (*Franklin v. Westfall,* 27 Kan. 614; *Monroe v. City of Lawrence,* 44 Kan. 607, 24 Pac. 1113, 10 L. R. A. 520; *In re Thomas, Petitioner,* 53 Kan. 659, 37 Pac. 171; *In re Jahn, Petitioner,* 55 Kan. 694, 41 Pac. 956; *Assaria v. Wells,* 68 Kan. 787, 75 Pac. 1026.) An ordinance may not be enacted which conflicts with or will operate to nullify the state law. (*Assaria v. Wells,* supra; *In re Van Tuyl,* 71 Kan. 659, 81 Pac. 181.) A city may not by ordinance authorize that which a statute prohibits nor punish the doing of an act which the statute expressly authorizes, but, as we have seen, it is competent for a city, under the authority of the legislature, to provide that an act shall be an offense against the authority of the city although the same act is made an offense against the state. An ordinance enacted in the exercise of the police power is not necessarily inconsistent with a state law on the same subject because the city provides for greater restrictions or makes higher standards than is provided or made by the statute. (*Walker v. Railway Co.,* 95 Kan. 702, 149 Pac. 677.) Nor is an ordinance repugnant to a statute merely because the penalty prescribed is greater than is fixed by the statute for the commission of a like offense. (*Minneola v. Naylor,* 84 Kan. 147, 113 Pac. 309; *Stark v. Geiser,* 90 Kan. 504, 135 Pac. 666.)

It is argued that regulations of the kind in question should be uniform and that there is no good reason for prescribing different standards of milk in a city than are generally provided for the people of the state. As was noted in *Walker v. Railway Co.,* supra, it may be necessary to make additional requirements and stricter regulations and to impose more severe penalties in a congested district like a city than are made and enforced in a rural district. In *Town of Neola v. Reichart,* 131 Iowa, 492, 109 N. W. 5, this question was under consideration, and it was held that municipalities are warranted in making other and greater restrictions than are provided for the state at large, the court saying:

"They are in many respects local governments established to aid the government by the state. The necessity of their organization may be found in the density of the population of localities and the conditions incidental thereto. Because of this, regulations peculiar to a particular community have proven essential to the accomplishment of its objects. Many acts are far more injurious, and the temptation to commit them

much greater, in such localities than in the state at large, and, when done, are not only wrongs to the public at large, but additional wrongs to the corporations within which. perpetrated. When made penal by both state and city or incorporated town, each becomes a separate offense against the state and against the municipality. The penalty imposed by the city or town is superadded to that fixed by statute on account of the additional wrong done, so that the wrongdoer is not punished twice for the same offense, but for two offenses arising from the same act." (p. 497.)

A case quite closely in point was determined by the supreme court of California. An ordinance was enacted regulating the sale of milk in Los Angeles and fixing standards of purity which differed to some extent from those prescribed by the statute. It was contended there that as the standard fixed by the ordinance differed from that prescribed by the state the ordinance must be held to be invalid. The court decided that the mere fact that the state had prescribed certain regulations did not prohibit a city from making other and additional regulations, and that so long as there was no real conflict between them and the provisions of the ordinance were not in themselves unreasonable both .the statute and the ordinance might be enforced. It was said that there might be ground for a claim of conflict if the ordinance authorized the sale of milk of lower standard or a less percentage of milk fat than was exacted by the state, but having in view the conditions existing in a city higher standards or additional requirements might be legally enforced. It.was said:

"The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements." (In re Hoffman, 155 Cal. 114, 118, 99 Pac. 517.)

There is a conflict in the authorities on the question involved here, but under the view which has been taken in this state the additional regulations and the superadded penalties are not repugnant to the state statute nor can they be deemed to be unreasonable. An elaborate note upon the question showing the course of judicial decision, depending to a great extent upon the statutes and constitutions of the different states, may be found in 17 L. R. A., n. s., 49.

McCracken v. Bridge Co.

It is further said that the evidence does not support the conviction but it appears to be sufficient to show a violation of the ordinance.

The judgment is affirmed.