No. 40,721

THE CITY OF BELOIT, KANSAS, *Appellee*, v. JOE LAMBORN, *Appellant*.

(321 P. 2d 177)

Opinion filed January 25, 1958.

*Arno Windscheffel,* of Smith Center, and *Clifford H. Phillips,* of Red Cloud, Nebraska, argued the cause and appeared on the briefs for the appellant.

*Orin C. Jordan,* city attorney, of Beloit, argued the cause and appeared on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This appeal involves the validity of ordinance No. 961 of the city of Beloit (a city of the second class), which pro-

vides for the regulation and licensing of the production and distribution of milk sold for ultimate consumption within the city.

In a complaint filed in the police court of the city of Beloit, Joe Lamborn, defendant (appellant), was charged with bringing milk into the city for distribution and sale without a distributor's permit in violation of city ordinance No. 961. On appeal to the district court, defendant moved to quash the complaint, setting forth eight separate grounds as to its invalidity. The motion was overruled. Defendant was found guilty and sentenced to pay a fine of ten dollars. He appeals.

The cause was submitted to the district court upon an agreed statement of facts, and exhibits were received in accordance therewith. It was stipulated that defendant was employed by Valley Dairy, Inc. (hereinafter referred to as "Valley"), a broker and distributor of milk with its principal place of business at Red Cloud, Nebraska. Valley is authorized to do business in Kansas and has a dairy manufacturer's license and a broker's license issued to it by the dairy division of the Kansas department of agriculture. Defendant was arrested and charged with bringing milk into the city for sale at the direction of his employer Valley, which had no city distributor's permit.

Ordinance No. 961 was adopted February 15, 1955. The full title of the ordinance, so far as is material here, is as follows:

"An ordinance to regulate the production, transportation, processing, handling, sampling, examination, grading, labeling, regarding, and sale of milk and milk products; the inspection of dairy herds, dairies, and milk plants; the issuing and revocation of permits to milk producers, haulers, and distributors; the establishment of permit fees; the fixing of penalties; . . ."

The ordinance defines milk products and then excludes from its coverage all products except fluid milk. It provides that only Grade A pasteurized milk which rates not lower than ninety per cent under the Public Health Service rating system shall be sold in the city, although milk which does not meet this standard may be degraded and sold for temporary periods or during emergencies. Other sections prescribe sanitary standards for dairies and for vehicles used in transportation of milk. Section 9 provides that milk for pasteurization, unless delivered to a milk plant or receiving station within two hours after milking, shall be cooled and maintained at sixty degrees Fahrenheit, or less.

Section 14 provides that milk from points beyond the limits of routine inspection of the city, except milk for manufacturing purposes, may not be sold in the city unless produced and/or pasteurized under conditions equivalent to those provided by the ordinance. Distributors are required to furnish statements of the sources and quantities of milk purchased and sold, records of inspection and tests, and certification to the city health officer that the milk rates not less than ninety per cent on the Public Health scale.

Section 15 of the ordinance provides for issuance of a producer's and a hauler's permit upon payment of fees of one dollar and five dollars, respectively. Distributors' permits may be issued to distributors within the city's jurisdiction or from points beyond the area of its routine inspection, upon compliance with section 14 and upon payment of a yearly fee of $225. It was further stipulated that beginning January 1, 1957 the distributor's permit fee was reduced to $125.

One dairy in Beloit and four dairies outside the limits of the city's inspection had each paid the $225 fee and had secured distributors' permits. Valley had not paid the Beloit distributor's permit fee of $225, although its Nebraska processor had been granted for its pasteurized milk a ninety-two per cent rating on the United States Public Health Service scale and Valley had secured a certificate of conformity with the Grade A rules and regulations of the Nebraska department of agriculture and inspection.

Finally, it was stipulated that the city of Beloit had no milk inspector and all inspections were made by an employee of the dairy division of the Kansas department of agriculture, for which the city paid the sum of forty dollars a month to the office of the dairy division.

Defendant contends here that ordinance No. 961 is void. He maintains first that the state covers the entire field of licensing and regulating nonresident manufacturers and distributors of dairy products by the terms of G. S. 1949, 65-701 *et seq.*, and there is no power in the city to regulate in the premises. In the alternative, he argues that even if the city has authority to enact ordinances concerning the production and sale of dairy products, the ordinance in question conflicts and is inconsistent with the state law and is therefore invalid.

G. S. 1949, 65-701 *et seq.* imposes a duty on the state dairy com-

missioner to inspect creameries and dairies, to prohibit the production and sale of unclean and unwholesome dairy products, and to take samples of dairy products and have them analyzed and tested. Standards are set forth for cleanliness of premises and utensils and for minimum butterfat content of dairy products, and it is made unlawful to sell or offer for sale milk or other dairy products from diseased animals, or products which have been exposed to contamination. Milk or cream brokers must secure licenses to operate their businesses, for which an annual license fee of ten dollars is imposed. It is made unlawful for any person to sell or offer for sale dairy products manufactured outside the state without obtaining a manufacturer's license from the state dairy commissioner upon payment of a ten dollar fee. Samples of such products moved into the state must, upon request, be submitted to the state dairy commissioner, who issues a license if the products are up to standard and in compliance with state laws.

The department of agriculture, acting through the dairy commissioner, has promulgated regulations for Grade A milk and milk products which, by the provisions of G. S. 1949, 77-410, have the force and effect of law. The regulations, after defining milk products, prescribe certain sanitary standards for dairies and vehicles and provide that milk for pasteurization, if held by the producer for longer than two hours after milking, must be cooled and kept at fifty degrees Fahrenheit, or less. Set forth are minimum sanitary cow health and bacterial count standards for Grade A raw milk not for pasteurization. In addition, Section 4-7-50.10.1 provides that Grade A milk and milk products from points beyond the limits of routine inspection of the state may not be sold in Kansas, unless produced and/or pasteurized under provisions substantially equivalent to the requirements of the regulations.

G. S. 1949, 14-401 provides that cities of the second class shall have the power to enact ordinances not repugnant to the constitution and laws of the state and as deemed expedient for the *health*, good government and peace of their inhabitants. In *Ash v. Gibson*, 145 Kan. 825, 67 P. 2d 1101, this court declared that the legislative policy of the state, since its founding, has been:

" . . . to confer on the cities the right of self-government in such large measure that it amounts to the possession of police power where the safety, health and general welfare of its people are concerned." (1. c. 833)

Instead of specifically defining every act necessary to the health,

safety and peace of the public, the legislature granted authority (14-401) to the cities to determine by ordinance what was best for the general health and welfare of their inhabitants. Before it can be held that the enactment of the state dairy law (Ch. 65, Art. 7) has taken away from the cities of the state the right to regulate a matter so clearly connected with the health of their inhabitants as the production and sale of milk *(Kansas City v. Henre, 96 Kan. 794, 153 Pac. 548)*, such intent must be manifested clearly by the legislature in the provisions of the statute. *(Ash v. Gibson, supra.)*

In *Ash v. Gibson*, 146 Kan. 756, 74 P. 2d 136, the statute there in question declared expressly that its object was to provide uniform regulation of vehicular traffic throughout the state. The city ordinance flatly forbade the transportation of gasoline in amounts larger than 600 gallons, although the statute directed that cities should designate streets and highways on which trucks and other commercial vehicles might be operated. Considering the express intent of the legislature and the provisions of the statute which regulated certain aspects of city traffic and granted other powers to cities, this court declared that the state had pre-empted the field and the statute withdrew from the city power to enact the ordinance in question.

Where the legislature intends to specifically or exclusively reserve to the state the power to regulate, such intent is clearly manifested in the statute. *(Kansas Power & Light Co. v. City of Great Bend*, 172 Kan. 126, 238 P. 2d 544.) In the instant case, we can find no such intent in the state dairy law (Ch. 65, Art. 7) or in the regulations promulgated by the dairy commissioner. The regulation of the production and sale of milk is within the province of the city, and defendant's first contention must fail.

Neither can we sustain defendant's contention that the ordinance conflicts and is inconsistent with the state law. An ordinance enacted in the exercise of police power is not necessarily inconsistent with a state law on the same subject simply because the city provides higher standards than those provided by the statute. *(Kansas City v. Henre, supra*, 797.) An ordinance may not ignore the state's regulatory acts, nor deny rights granted by the state, nor grant rights denied by the state so as to nullify the state law *(Trimble v. City of Topeka*, 147 Kan. 111, 75 P. 2d 241); but we have declared, many times that a city by ordinance may extend regulation beyond the limits of general state statutes dealing with the same subjects.

(*Kansas City v. Henre, supra; Garden City v. Legg,* 126 Kan. 569, 268 Pac. 827; *State v. Reynolds,* 152 Kan. 762, 107 P. 2d 728; *City of Garden City v. Miller,* 181 Kan. 360, 311 P. 2d 306.) It may be necessary in a congested district such as a city to make stricter regulations than are made and enforced by statute for the state at large. (*Kansas City v. Henre, supra,* 797, 798; *Ash v. Gibson,* 145 Kan. 825, 67 P. 2d 1101.)

Here the statute and regulations prescribe sanitary conditions and provide for licensing and inspection of products which come from beyond the routine area of state inspection. The ordinance extends the regulation to provide that only Grade A pasteurized milk may be sold within the city. The inspection and licensing provisions of the ordinance are designed to enforce this stricter standard. We cannot say that this ordinance conflicts with the state statute. Rather, it extends regulations beyond the limits of the statute. Both the statute and the ordinance may therefore be enforced.

Defendant contends, however, that the statute and ordinance conflict, in that the regulations promulgated by the dairy commissioner provide that milk for pasteurization must be cooled and kept at fifty degrees Fahrenheit, or less, while the ordinance provides for cooling and maintenance at sixty degrees Fahrenheit, or less. The section of the ordinance in question is clearly in conflict with the state law. It is less strict than the state regulation and, in effect, grants a right denied by the state. The section, however, is severable from the other provisions of the ordinance, and its invalidity does not affect the validity of the other sections.

Defendant next urges that the ordinance is discriminatory and does not tend to promote the health of the community, in that it excludes all products except fluid milk from its scope. To be valid, a distinction imposed by an ordinance must be reasonable and must rest on some ground of difference fairly related to the object of the legislation. (*Matheny v. City of Hutchinson,* 154 Kan. 682, 121 P. 2d 227; *Oklahoma City v. Poor,* Okl., 298 P. 2d 459.) There are good reasons why the governing body of the city might choose to regulate the sale of milk and leave the regulation of other milk products to the lesser requirements of the state. There is a greater traffic in milk than in other dairy products and, hence, more frequent inspection than can be provided by the state may be necessary to safeguard the health of the inhabitants of the community.

We cannot say there is no reasonable basis for the city's regulation of fluid milk only.

Defendant also argues that the ordinance places an unreasonable burden on interstate commerce and violates the interstate commerce clause of the United States constitution. This contention is without merit. In *Dean Milk Co. v. Madison,* 340 U. S. 349, 71 S. Ct. 295, 95 L ed 329, cited by defendant, the municipal ordinance held repugnant to the interstate commerce clause completely barred the sale of pasteurized milk unless it had been pasteurized and bottled at a plant within five miles from the center of the city, or unless its source had been inspected by city officials, whose inspection radius extended only twenty-five miles from the center of the city. The court held that, in practical effect, the ordinance excluded wholesome milk produced and pasteurized in another state, a result the city could not reach if reasonable nondiscriminatory alternatives to protect the health of its inhabitants were available. In the instant case, the ordinance passed by the city to protect the health and safety of its inhabitants does not exclude or discriminate against milk coming from Nebraska or from anywhere else, either within or without the state. It only requires that all milk sold in the city of Beloit be Grade A pasteurized milk which rates not lower than ninety per cent under the Public Health Service rating system.

Defendant's next argument is that the $225 permit fee required by the ordinance is unreasonable and oppressive. This court has held that there must be a wide discretion vested in the governing bodies of cities as to the amount of a license fee; that the courts will not interfere unless the fee imposed is flagrantly excessive. (*City of Lyons v. Cooper,* 39 Kan. 324, 18 Pac. 296; *In re Martin,* 62 Kan. 638, 64 Pac. 43; *Matheny v. City of Hutchinson, supra.*) In *State, ex rel., v. Ross,* 101 Kan. 377, 166 Pac. 505, a state regulatory statute was challenged on the ground that the income derived from the fees exacted so exceeded the expenses of its enforcement as to characterize it as a revenue measure which, under the facts of the case, would have been invalid. The court declared:

"The mere fact that the fees charged under such a statute exceeded the expense of its execution is not enough to render it invalid . . . To have that effect one of two conditions must be met: either the discrepancy must be so great that the court is forced to the conclusion that the legislature in the first instance acted in bad faith, and intended to produce a revenue under the pretext of requiring an inspection, or else the law-making body must have

neglected an opportunity to revise the charges exacted after experience had demonstrated beyond controversy that as previously imposed they were unreasonably and unnecessarily high." (1. c. 379)

We cannot say that the $225 fee here is excessive or oppressive. Defendant would have us say that the discrepancy between the stipulated forty dollars a month or $480 a year paid by the city for the services of the state inspector and the total income of some $1125 a year from five distributors indicates that the fee exacted is excessive. The record does not indicate that the payment to the dairy inspector is the only expense incurred by the city. In any event, the fee of forty dollars a month is the amount paid for routine inspection. Emergency situations involving widespread contamination or outbreak of disease would require expenditure of greater sums for more frequent inspection.

In addition, when the city adopted the ordinance, it was acting without practical experience to guide its judgment. It did not know how many distributors would secure licenses or how much work would be required of the inspector or what other incidental expenses would arise. After experience had demonstrated that the charges were higher than necessary in view of the number of distributors who procured licenses and the actual expenses of inspection, the city lowered the license fee to $125 a year.

Finally, the argument that the city fee is unreasonable because the state fee is only ten dollars a year has no merit. The reasonableness of the state fee, based on the number of distributors on whom it is imposed and the extent of the state's services, has little or no bearing on the reasonableness of the city's fee.

Defendent also argues that the regulation and the inspection required by the ordinance are exact duplications of the state requirements and this duplication indicates that the city ordinance adds nothing to the health of the city's inhabitants but, in fact, is designed to restrict outside competition. It must be noted first that the city ordinance extends the state requirements by permitting only Grade A pasteurized milk to be sold within the city. Granting that the city, if it chose to do so, could enforce its standards merely by requiring distributors to present certification by the Public Health Service or certification by the state that its Grade A requirements had been met, the city's inspection cannot be considered a needless duplication unrelated to the health of the city's inhabitants.

In the movement of milk from cow to customer, there are many

opportunities for contamination and for variation from standards. The inspections of the Public Health Service and of the state are of necessity sporadic and infrequent. Ordinance No. 961 enables the city to conduct more frequent inspections to insure the regular maintenance of strict health standards for its citizens. If, at some point, an additional licensing and inspection requirement does no more than impose a financial burden so heavy as to limit competition without appreciably safeguarding the health of a city's inhabitants, that case is not now before us.

Defendant's last argument—that the ordinance is both a regulatory and revenue measure, while purporting to be only a regulatory measure—has been considered above and is found to be without merit. *(State, ex rel., v. Ross, supra.)*

It follows that the judgment of the trial court is affirmed.

It is so ordered.