No. 90,578

STATE OF KANSAS, *ex rel*. PHILL KLINE, Attorney General, *Appellant*, v. The UNIFIED BOARD of COMMISSIONERS of the UNIFIED GOVERNMENT of WYANDOTTE COUNTY/KANSAS CITY, KANSAS, and the MAYOR and COUNCIL of the CITY of EDWARDSVILLE, KANSAS, *Appellees*.

(85 P.3d 1237)

Opinion filed March 19, 2004.

*Julene L. Miller,* deputy attorney general, argued the cause, and *Mary D. Feighny,* assistant attorney general, and *Phill Kline,* attorney general, were with her on the briefs for appellant.

*Henry E. Couchman, Jr.,* assistant counsel, Unified Government of Wyandotte County/Kansas City, Kansas, argued the cause, and *Harold T. Walker,* chief counsel, Unified Government of Wyandotte County/Kansas City, Kansas, and *H. Reed Walker,* city attorney, City of Edwardsville, Kansas, were with him on the brief for appellees.

*Donald L. Moler, Jr.,* executive director, and *Sandra Jacquot,* legal counsel, were on the brief for *amicus curiae* League of Kansas Municipalities.

*Rebecca S. Rice,* of Topeka, was on the brief for *amicus curiae* Kansas Beer Wholesalers Association.

*Alan Cobb,* of Topeka, was on the brief for *amicus curiae* Kansas Association of Beverage Retailers.

*Barkley Clark,* Shook, Hardy & Bacon L.L.P., of Overland Park, was on the brief for *amicus curiae* City Attorneys Association of Kansas.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a quo warranto and declaratory judgment action filed in district court by the State (on relation of the Attorney General) against the Unified Board of Commissioners of the Unified Government of Wyandotte County/Kansas City, Kansas, and the Mayor and Council of the City of Edwardsville, Kansas (Cities). The State sought an order declaring that charter ordinances passed by the Cities to exempt the Cities from the Sunday liquor sales prohibition of K.S.A. 41-712 were invalid and void. On cross-motions for judgment on the pleadings, the district court concluded that, because provisions of the Kansas Liquor Control Act, K.S.A. 41-101 *et seq.,* are not uniformly applicable, the Cities had authority under the Home Rule Amendment to the Kansas Constitution, art. 12, § 5 to exempt the Cities from the Sunday liquor sales prohibition. The State appealed. On the State's motion, this court transferred the case from the Court of Appeals under K.S.A. 20-3017.

Four *amici curiae* briefs have been filed. Two *amici* urge this court to affirm the district court: The City Attorneys Association of Kansas (City Attorneys) and the League of Kansas Municipalities (League of Municipalities). One advocates reversing the district

court's decision: The Kansas Association of Beverage Retailers (Beverage Retailers), a non-profit trade association made up of retail liquor stores located throughout Kansas. The fourth requests this court to find the phrase, "on Sunday" in K.S.A. 41-712 unconstitutional and to strike it from the statute: The Kansas Beer Wholesalers Association, a Kansas trade organization whose members are beer wholesalers licensed pursuant to the Kansas Liquor Control Act.

The sole issue raised in this appeal is whether the charter ordinances exempting the Cities from the Sunday retail liquor sales prohibition of K.S.A. 41-712 is a valid exercise of the home rule authority granted to cities by Article 12, § 5 of the Kansas Constitution.

The following facts are taken from the pleadings:

On November 5, 2002, an election was held for the purpose of voting on Charter Ordinance No. CO-1-02, which was entitled:

"A charter ordinance exempting the Unified Government of Wyandotte County, Kansas City, Kansas, in that portion of Wyandotte County defined as Kansas City, Kansas, from the provisions of K.S.A. 41-712 prohibiting alcoholic liquor sale on Sunday, and providing substitute and additional provisions on the same subject allowing alcoholic liquor sales on Sunday."

A majority of voters favored the charter ordinance to exempt Kansas City, Kansas, from the Sunday sales prohibition of K.S.A. 41-712. The charter ordinance became effective November 8, 2002. Several liquor retail establishments opened for business and made liquor sales on Sunday, November 10, 2002.

On August 26, 2002, the Mayor and Council of the City of Edwardsville, Kansas, passed Charter Ordinance No. 2002-1 to exempt Edwardsville from the Sunday sales prohibition of K.S.A. 41-712. No protest petition was filed to bring the charter ordinance to an election. It took effect November 12, 2002.

On November 21, 2002, the State filed a petition for quo warranto and declaratory judgment alleging that K.S.A. 41-712 is not subject to the charter ordinance provisions of the Home Rule Amendment to the Kansas Constitution, art. 12, § 5. The State sought an order of the district court declaring the Cities' charter ordinances invalid and void.

The parties filed cross-motions for judgment on the pleadings. In ruling on the parties' cross-motions for judgment on the pleadings, the district court resolved the case in the Cities' favor as a matter of law on the facts alleged and admitted. See K.S.A. 60-212(c). The State appealed.

This court's review of a question of law is unlimited. See *Duarte v. DeBruce Grain, Inc.*, 276 Kan. 598, 602, 78 P.3d 428 (2003). At issue is K.S.A. 41-712, which provides: "No person shall sell at retail any alcoholic liquor . . . (1) On Sunday." The section as a whole provides:

"No person shall sell at retail any alcoholic liquor; (1) On Sunday; (2) on Memorial Day, Independence Day, Labor Day, Thanksgiving Day or Christmas Day; or (3) before 9 a.m. or after 11 p.m. on any day when the sale is permitted, except that the governing body of any city by ordinance may require closing prior to 11 p.m., but such ordinance shall not require closing prior to 8 p.m."

K.S.A. 41-712 is part of the Liquor Control Act, K.S.A. 41-101 *et seq.*

Subsections (a), (b), (c)(1), and (d) of the Home Rule Amendment to the Kansas Constitution, art. 12, § 5 provide:

"(a) The legislature shall provide by general law, applicable to all cities, for the incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated and cities may be dissolved: *Provided,* That existing laws on such subjects not applicable to all cities on the effective date of this amendment shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance.

"(b) Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: *Provided,* That the legislature may establish not to exceed four classes of cities for the purpose of imposing all such limitations or prohibitions. Cities shall exercise such determination by ordinance passed by the governing body with referendums only in such cases as prescribed by the legislature, subject only to enactments of the legislature of statewide concern applicable uniformly to all cities, to other enactments of the legislature applicable uniformly to all cities, to enactments of the legislature applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction and to enactments of the legislature prescribing limits of indebtedness. All enactments relating to cities now in effect or hereafter enacted and as

later amended and until repealed shall govern cities except as cities shall exempt themselves by charter ordinances as herein provided for in subsection (c).

"(c) (1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city.

. . . .

"(d) Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government."

Subsections (c)(2), (3), and (4) of the Home Rule Amendment set out procedures governing charter ordinances.

As to the above, this court observed in *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701 (2000):

"In 1961, the home rule amendment to the Kansas Constitution took effect and empowered cities to determine their local affairs. Kan. Const. art. 12, § 5(b). The legislature retains power over statewide matters. Hence, home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment. Generally speaking, where the legislature has not preempted the field with a uniformly applicable enactment, cities may exercise their home rule power by one of two means. Where there is a nonuniform legislative enactment that is in conflict with the action a city wants to take, a charter ordinance may be used to exempt the city from the legislative enactment. Kan. Const. art. 12, § 5(c). Where there is no legislative enactment in conflict with the local action, an ordinary ordinance will suffice."

The district court concluded that at least three sections of the Liquor Control Act do not apply uniformly to all cities:

"K.S.A. 41-301 differentiates between cities of the first and second class on the one hand and cities of the third class on the other as to who will be counted in an election to approve package sales of alcohol. K.S.A. 41-302 makes the same distinction when it comes to determining the number of signatures required on a petition to place the issue of retail sales of package liquor on the ballot. Also, K.S.A. 41-719(c)(3) differentiates among cities on the basis of population when it comes to allowing alcohol consumption in a drinking establishment on property owned by an airport authority.

"It matters not that the individual provision the defendants opted out of applies uniformly. If any of the provisions of the enactment (in this case, the Act) are not

uniform in their application, the home rule amendment allows the opt out. *City of Junction City v. Griffin*, [227 Kan. 332, 607 P.2d 459 (1980)].

"In the face of such non-uniformity, the court must conclude that the defendants had the authority under the home rule amendment of the Kansas Constitution to charter out from under the statutory ban on Sunday sales of alcohol and allow such sales in their respective jurisdictions. Such a conclusion is in accord with the home rule amendment's mandate that it '. . . be liberally construed for the purpose of giving to cities the largest measure of self-government.' "

During oral argument on the motions for judgment on the pleadings in the district court, counsel for the State "essentially conceded that at least one portion of the Act did not apply uniformly." Having conceded that the usual test for the exercise of home rule favored the Cities, the State relied on the argument that K.S.A. 41-712 is not subject to home rule exemption because it is not applicable to cities. The district court rejected the State's argument that the threshold inquiry must be whether K.S.A. 41-712 is "applicable" to cities. The district court stated:

"Is it necessary that K.S.A. 41-712 be 'applicable' to a city before it can charter out from under its effect? The case of *Brewster v. City of Overland Park*, 233 Kan. 390, 661 P.2d 1240 (1983), cited by the State appears to answer in the affirmative. It seems to stand for the proposition that in determining the validity of a city's charter ordinance that opts out of a state enactment by virtue of the home rule amendment, the threshold inquiry for the court is whether the state enactment is 'applicable' to the cities. There, the court held that the City of Overland Park could not charter out from under a statute that granted a sales tax exemption to attorneys that pay a law library fee because that statute did not apply to cities. As a result, the court found it unnecessary to consider whether the exemption applied uniformly.

"Beyond that basic premise, however, the case offers little assistance to the courts in rendering a decision on a different set of facts. It mentions no criteria for a court to consider here as to whether the prohibition of Sunday sales of liquor is 'applicable' to cities or not. Accordingly, the decision must be limited to its facts."

On appeal, the State devotes most of its brief to its contention that the Cities cannot charter out of the prohibition on Sunday liquor sales because K.S.A. 41-712 is applicable to private conduct rather than to cities. The State does not contend that the Liquor Control Act is uniformly applicable to all cities. In support of its position that 41-712 does not apply to cities, the State notes that

K.S.A. 41-712(1) prohibits a person from selling alcoholic liquor at retail on Sunday and that K.S.A. 41-102(t) defines person as "any natural person, corporation, partnership, trust or association." Although a municipal corporation may be included in that statutory definition of person, according to the State, a municipal corporation is not a person within the meaning of K.S.A. 41-712 because corporations cannot hold retail liquor licenses and only licensees can sell liquor at retail. See K.S.A. 2003 Supp. 41-311(b)(6); K.S.A. 41-104; K.S.A. 41-308(a).

The State relies on *Brewster v. City of Overland Park*, 233 Kan. 390, 661 P.2d 1240 (1983). At issue in *Brewster* was K.S.A. 19-1310 (Ensley 1981) (now K.S.A. 20-3127[e]), which provided: "All attorneys registered under this act shall not be liable to pay any occupation tax or city license fees levied under the laws of this state by any municipality." The court described the context of the statute:

"County law libraries are authorized to be created upon a vote of the majority of the attorneys practicing or residing in the particular county. If a county law library is so created, all practicing attorneys in the county must register and pay an annual registration fee. . . .

"The county law library statutes are located in Article 13 of Chapter 19 which concerns the functions of the clerk of the district court. The clerk has charge of the election, registration, and fees paid by attorneys as well as deducting the appropriate docket fees for the library's maintenance. Management of the library is vested in the district judges and representatives of the bar. The county law library is only peripherally a governmental function, although the county commission is required to provide space therefor or pay a sum in lieu thereof. See K.S.A. 19-1321 for this exception." 233 Kan. at 392.

The court decided the matter on a ground not raised by the parties:

"K.S.A. 19-1310 *grants an exemption* from any occupation tax or city license fee *to attorneys registered for county law library purposes*. K.S.A. 19-1310 does not forbid a county or city from imposing such a tax or fee, but merely grants an exemption therefrom to a class of individuals. Under such circumstances we conclude K.S.A. 19-1310 does not meet the threshold requirement of the Home Rule Amendment that an enactment from which a city wishes to exempt itself from be *applicable* to cities. Accordingly, the question of whether K.S.A. 19-1310 is *uniformly applicable* to cities is not reached." 233 Kan. at 392-93.

*Brewster*, unlike all other home rule cases, treats a legislative enactment as if it affects only private conduct or only governmental action. Examination of the statute at issue in *Brewster* shows that in fact it affected both. The statute could have been stated as a prohibition against cities collecting city-levied occupation taxes or license fees from the certain individuals, but it was stated the other way around. Barring the exercise of cities' home rule because the statute at issue happened to have been stated in terms of the exemption rather than the prohibition does not appear to be in keeping with the mandate of Article 12, § 5(d) of the Kansas Constitution that powers granted to cities by the Home Rule Amendment shall be liberally construed in order to give cities the largest measure of self-government. We agree with the trial court that *Brewster* is in a class of its own. Since it was decided in 1983, *Brewster* has never been cited in a published opinion. For that reason, the decision effectively has been limited to its unique facts and parties. We conclude *Brewster* should be so limited.

The State concedes that the Liquor Control Act refers to and affects cities but insists that the Act is not an enactment that applies to cities within the meaning of the Home Rule Amendment. The language that the State cites is in subsection (c)(1):

"Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature *applying to such city*, other than enactments of statewide concern applicable uniformly to all cities, other enactments applicable uniformly to all cities, and enactments prescribing limits of indebtedness, shall not apply to such city." Kan. Const. art. 12, § 5(c)(1).

The State quite literally construes the phrase, applying to such city, as any enactment that directly prohibits or allows some city action. Quite another interpretation is suggested by one author's remarks on subsection (c)(1):

"Note that a city can not by charter ordinance exempt itself from a statute which does not apply to it. If there is a statute which does not apply to a city *because of population or other requirements or because it applies to a different class of cities*, a charter ordinance may not be used to make it apply to the city." (Emphasis added.) Martin, *Home Rule for Kansas Cities*, 10 Kan. L. Rev. 501, 511 (1962).

The State's construction of the phrase, applying to such city, does not take into account either the background of special legislation for classes of cities against which the Home Rule Amendment was adopted or preservation in the amendment of classes of cities for certain purposes. Martin's construction of the phrase does take these things into account and, as a result, is more convincing. Placed in context, the phrase, applying to such city, seems certain to have been crafted to fit the legislature's practice of enacting special legislation for classes of cities. The Cities' view of the phrase, applying to such city, essentially is the same as Martin's but is stated in strictly practical terms as meaning that an enactment is effective within that city. An enactment that is effective within a city is one that applies to the class of cities to which it belongs.

The State contends that the history of the Home Rule Amendment shows that the amendment was intended to address statutes that apply to cities and their governments rather than statutes that apply to private persons. Before the Home Rule Amendment, cities could only exercise authority conferred by statute. Hence, the legislative agenda was heavily local in nature and much of the legislation was special legislation aimed at cities. The dual purpose of the Home Rule Amendment was to unburden the legislature of local matters and to empower cities. This sound statement of the purpose of the Home Rule Amendment, however, does not prove the State's point that the amendment does not permit cities to exempt themselves from legislation that addresses private conduct. In order to make the sound statement serve its argument, the State in its statement of the principle narrowed the empowerment of cities. According to the State, "[t]he Home Rule Amendment was designed to free the Legislature from having to address matters that could best be handled locally and to empower cities *to opt out of special legislation applying to cities.*"

In making this argument the State ignores the plain language of the Home Rule Amendment. Cities' empowerment under the Home Rule Amendment is much broader than cities simply exempting themselves from certain legislation. Under the amendment, the legislature retained for itself only the power to govern incorporation of cities and the methods by which city boundaries

may be altered, cities may be merged or consolidated, and cities may be dissolved. Kan. Const. art. 12, § 5(a). The legislature did not retain for itself the power to govern private conduct. Cities were empowered to determine local affairs, with only the specific exceptions identified in subsection 5(a), and local government including the levying of taxes, excises, fees, charges and other exactions, by means of ordinary and charter ordinances, except where the legislature has preempted a field by enacting legislation uniformly applicable to all cities. Kan. Const. art. 12, § 5(b).

The State argues that allowing cities to use charter ordinances to opt out of the prohibition on Sunday liquor sales will open the floodgates. If a few references to cities in the Liquor Control Act subject it to home rule exemption, the State warns, cities will be able to opt out of all provisions of the Act. Other legislative enactments, the warning continues, such as the Uniform Act Regulating Traffic, K.S.A. 8-1401 *et seq.*, and the Campaign Finance Act, K.S.A. 25-4142 *et seq.*, will be vulnerable to "such mischief." The proposition on which the State's argument is built, that legislative references to cities rather than uniform applicability control whether legislation is subject to home rule exemption, is not supported by the language of the amendment or case law construing it with the single exception of *Brewster*, which is confined to its facts and parties, as discussed earlier. The State's argument is not sound, but even if it were sound, the floodgates may be closed simply by the legislature's replacing special legislation with enactments that are uniformly applicable to all cities.

A licensee's violation of the Liquor Control Act "with respect to the . . . sale of alcoholic liquor or cereal malt beverage . . . shall be punishable: . . . (1) For a first offense, by a fine of not more than $500; and (2) for a second or subsequent offense, by a fine of not more than $1,000 or by imprisonment for not more than six months, or both." K.S.A. 41-901(a) and (b). The State asserts that this home rule case is unique because it involves the Cities decriminalizing an activity prohibited by the State. Thus, according to the State, there is no authority for the district court's conclusion that cities may charter out of criminal statutes in order to allow an activity which the statutes prohibit. In other words, the

State seems to make the odd argument that the ruling in this case of first impression should be reversed because it is not based on precedent. Assuming for purposes of this discussion that the State correctly asserts that this is the first home rule case involving a statutory prohibition punishable by fine or imprisonment, the question would be whether the Home Rule Amendment distinguishes between legislative enactments with criminal penalties and those without criminal penalties. Examination of the Home Rule Amendment reveals nothing in its language that would support differential treatment of such enactments. Apart from the matters over which the legislature retained control in subsection (a)—incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated, and cities may be dissolved—no type of legislation is exempted from cities' exercise of home rule. Legislation involving the levying of taxes, excises, fees, charges, and other exactions is singled out in subsection (b) of the amendment, but only for the purpose of expressly permitting the legislature to establish classes of cities for the purpose of imposing limitations or prohibitions on the levying of taxes, excises, fees, charges, and other exactions and expressly permitting cities to exempt themselves from such enactments not uniformly applicable to all cities of the same class. If the legislature intends to preempt a field and exempt it from home rule, including matters enforced with penalty provisions, it has only to make such an enactment uniformly applicable.

The State argues that there is a division between matters of statewide concern and matters of local concern and that cities may not exercise home rule over matters of statewide concern. The State's premise is not generally accepted. One prominent author has stated: "No ordinance deals with an *exclusively local matter* and no statute regulates a matter of *exclusively state-wide concern.* Instead, the interests of the municipality and the state are nearly always *concurrent.*" Clark, *State Control of Local Government in Kansas: Special Legislation and Home Rule,* 20 Kan. L. Rev. 631, 662, (1972). In *City of Junction City v. Lee,* 216 Kan. 495, 498-99, 532 P.2d 1292 (1975), this court rejected a similar argument in relation to weapons control, see K.S.A. 21-4201 *et seq.,* stating:

"Weapons control is an area of cities' concern. That it is of concurrent state concern is no impediment to the exercise of authority by a city through ordinance so long as there is no conflict in terms with state legislation and the state legislature has not preempted the field. Answers to these latter questions determine whether an ordinance is 'subject to' state legislation within the meaning of the home rule amendment."

In *Lee*, this court also discussed whether criminal statutes are subject to home rule, stating:

"The further argument that by the enactment of our present criminal code the legislature has preempted for the state the entire field of criminal law was implicitly rejected in *City of Lyons v. Suttle*, 209 Kan. 735, 498 P.2d 9 (see dissenting opinion 209 Kan. 742-743, 498 P.2d 15). The statute relied upon for the theory of preemption is K.S.A. 21-3102, which states:

" '(1) No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state. . . .'

"The foregoing is simply codification of prior case law holding there are no common law crimes in Kansas—all crimes are statutory (see *State v. Koontz*, 124 Kan. 216, 218, 257 Pac. 944). Further negativing the notion our present criminal code was intended to preempt cities from that field are the several references to municipal courts in it and in our code of criminal procedure. For example, K.S.A. 21-3108(3), our former jeopardy statute, bars state prosecution under certain conditions if the defendant was prosecuted 'in the municipal or police court of any city of this state for a crime which is within the concurrent jurisdiction of this state. . . .' See also in our recently enacted municipal practice act provision for prosecution of non-traffic offenses (K.S.A. 1974 Supp. 12-4205)." 216 Kan. at 503.

Justice Schroeder dissented, and like the State in the present case, intimated that the sky was going to fall, stating: "In a far-reaching precedent the court by its decision is extending the Home Rule power of a city to legislate in the field of criminal law." 216 Kan. at 504. *Lee* was decided in 1975, and the sky has not fallen.

Liquor control, according to the State, is a matter of statewide concern. The State contends that Article 15, § 10 of the Kansas Constitution vests exclusive control of liquor in the State. That constitutional section provides: "The legislature *may* provide for the prohibition of intoxicating liquors in certain areas"; "*may* regulate, license and tax the manufacture and sale of intoxicating liquors, and *may* regulate the possession and transportation of intoxicating liquors"; and "*may* permit, regulate, license and tax the sale of intoxicating liquor by the drink in public places in a county

where the qualified electors of the county approve. . . ." Kan. Const. art. 15, § 10. It provides for county-by-county determination and permits the legislature to regulate the liquor trade; it does not vest exclusive control of liquor in the State. The State warns that allowing home rule over liquor sales "would eviscerate Article 15, Section 10 and set the 124-year history of liquor control in this State on its head." However, home rule of liquor sales by cities is preventable by the simple means of a uniformly applicable legislative enactment.

Continuing its attempt to draw an indelible line between local affairs and matters of statewide concern, the State cites *State ex rel. Schneider v. City of Kansas City*, 228 Kan. 25, 612 P.2d 578 (1980). The question in *Schneider* was "whether the home rule amendment, art. 12, § 5, authorizes Kansas City to enforce its building permit and code ordinances upon the Board of Regents who derive their authority through legislative action mandated by art. 6, § 2(b)." 228 Kan. at 31. The court distinguished *Schneider* from more typical home rule cases:

"Most of our decisions under the home rule amendment have involved the resolution of conflicts between local ordinances and state statutes as they affect third parties, usually individual members of the public caught up in the apparent conflict. How then do we resolve a conflict between Kansas City and the Board of Regents when the local ordinance conflicts with affirmative duties and requirements placed upon the Board of Regents by state statutes?" 228 Kan. at 31-32.

The court resolved the conflict by departing from accepted home rule analysis and narrowly limiting its decision. After quoting with approval Clark's disavowal of a strict division between matters of local and statewide concern which we have previously cited, the court stated: "We also recognize that the same author does not recommend the approach and conclusion we reach today. Our decision, however, is limited to the parties and factual situation before us." 228 Kan. at 33. Hence, *Schneider* is not precedent for the decision the State urges this court to make in the present case.

The State's final argument is that the history of liquor control in this state generally and K.S.A. 41-208 in particular demonstrate that liquor sales are not subject to home rule. K.S.A. 41-208 provides:

*"The power to regulate all phases of the control of the manufacture, distribution, sale, possession, transportation and traffic in alcoholic liquor* and the manufacture of beer regardless of its alcoholic content, except as specifically delegated in this act, *is hereby vested exclusively in the state* and shall be exercised as provided in this act. *No city shall enact any ordinance in conflict with or contrary to the provisions of this act and any ordinance of any city in effect at the time this act takes effect or thereafter enacted which is in conflict with or contrary to the provisions of this act shall be null and void.* Nothing contained in this section shall be construed as preventing any city from enacting ordinances declaring acts prohibited or made unlawful by this act as unlawful or prohibited in such city and prescribing penalties for violation thereof, but the minimum penalty in any such ordinance shall not exceed the minimum penalty prescribed by this act for the same violation, nor shall the maximum penalty in any such ordinance exceed the maximum penalty prescribed by this act for the same violation." (Emphasis added.)

K.S.A. 41-208 became effective in 1949, long before the Home Rule Amendment became effective in 1961. See L. 1949, ch. 242, sec. 13; effective March 9. K.S.A. 41-208 has never been amended. The question is whether the State has preempted the field by the above italicized language and thus whether the Cities can charter out from the Liquor Control Act.

The term "preemption or pre-emption" is cited many times in 19th-and early 20th-century Kansas opinions with regard to the federal exemption acts that extinguished Indian rights to land and made the land available for settlement, schools, municipalities, and railroads. See, *e.g., Hoyne v. Schneider*, 138 Kan. 545, 27 P.2d 558 (1933).

After passage of the federal labor laws, the term began to be used to mean federal preemption of state laws. For example, in *Krouse v. Lowden*, 153 Kan. 181, 109 P.2d 138 (1941), the Federal Employer's Liability Act governed a railroad worker's personal injury action. Federal preemption is based on the Supremacy Clause of Article VI of the United States Constitution. Black's Law Dictionary 1197 (7th ed. 1999), defines preemption as "[t]he principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation."

Unlike federal preemption, there is no supremacy clause as the basis for state preemption. Under our form of state government, the State is sovereign and cities have no inherent power except as

granted by the State. The source for state preemption, prior to home rule, is Article 2, § 1 of the Kansas Constitution: "The legislative power of this state shall be vested in a house of representatives and senate," together with Article 2, § 21: "The legislature may confer powers of local legislation and administration upon political subdivisions." This court has repeatedly recognized the State's authority to preempt a field. In *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, 228, 643 P.2d 188 (1982), we said:

"The rule denying power to a local body when the state has pre-empted the field is a rule of necessity based upon the need to prevent dual regulation which would result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only on the language of the statutes, but upon the purpose and scope of the legislative scheme. [Citations omitted.]"

Before the adoption of the Home Rule Amendment, cities had only that authority granted to the cities by the legislature. "Cities existed by and through statutes and had only such powers as were expressly conferred by statute without resort to implication." *Claflin v. Walsh*, 212 Kan. 1, 6, 509 P.2d 1130 (1973). This rule was first recognized in *City of Leavenworth v. Rankin*, 2 Kan. 357, Syl. (1864): "Municipal corporations are creations of law and can express only powers conferred by law and take none by implication." We recognized this rule as a rule of general application to curb the exercise of power not conferred upon State boards and governmental agencies. See *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 666, 274 Pac. 258 (1929). For that reason, prior to home rule, State "preemption" was a means for withdrawing authority that the State had granted to the cities. In *Ash v. Gibson*, 145 Kan. 825, 67 P.2d 1101 (1937), the City of Ottawa passed an ordinance forbidding the transportation of gasoline in excess of 600 gallons through the city. The plaintiffs argued that the City had no authority to pass the ordinance because no such authority had been granted to the City by the legislature. This court held the City had such authority, stating:

"Before this court would hold that the adoption of the highway amendment, and the enactment of the statutes pursuant thereto, *had taken away* from the

cities of the state the right to regulate a business as dangerous as the transportation of gasoline through these cities, it would have to appear clearly from the statutes by plain provisions that such was the intent of the legislature. We have looked for such provisions and fail to find them. We are compelled to reach the conclusion that the problem of regulating this traffic on the highways outside the cities is one thing and the regulation of it within the limits of a city is another and that the latter is within the province of the governing bodies of the cities." 145 Kan. at 834. (Emphasis added.)

However on rehearing, *Ash v. Gibson,* 146 Kan. 756, 761, 74 P.2d 136 (1937), this court noted that "while the motion for a rehearing in this case was pending Chapter 283 of the Laws of 1937 was enacted." This court reviewed that statutory enactment concluding that the enactment

"covered the matter dealt with in the ordinance. Therefore, the power of the city to enact the ordinance in question as held by this court in *Ash v. Gibson,* 145 Kan. 825, was *withdrawn* by the enactment of chapter 283 of the Laws of 1937. It follows that the ordinance must be held to have been abrogated and superceded by the statute." 146 Kan. at 767. (Emphasis added.)

The *Ash* court never used the term "preempted."

In *City of Beloit v. Lamborn,* 182 Kan. 288, 321 P.2d 177 (1958), the City's authority to pass an ordinance providing for regulation and licensing of the production and distribution of milk in the city was at issue. We held:

"Where the legislature intends to specifically or exclusively reserve to the state the power to regulate, such intent is clearly manifested in the statute. (*Kansas Power & Light Co. v. City of Great Bend,* 172 Kan. 126, 238 P.2d 544.) In the instant case, we can find no such intent in the state dairy law (Ch. 65, Art. 7) or in the regulations promulgated by the dairy commissioner. The regulation of the production and sale of milk is within the province of the city, and defendant's first contention must fail." 182 Kan. at 292.

In so holding, we used the term "pre-emption" in describing the holding in *Ash:*

"Considering the express intent of the legislature and the provisions of the statute which regulated certain aspects of city traffic and granted other powers to cities, this court declared that the state had pre-empted the field and the statute withdrew from the city power to enact the ordinance in question." *City of Beloit,* 182 Kan. at 292.

As we noted in *Claflin*, 212 Kan. at 6, this concept of city governance was changed by the adoption of the Home Rule Amendment: "No longer are cities dependent upon the state legislature for their authority to determine their local affairs and government. Since home rule, cities have power granted directly from the people through the constitution without statutory authorization." For that reason, the State's right to preempt a city's action also changed. The State cannot withdraw authority it can no longer grant.

In *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P.2d 524 (1972), the issue was the adoption of a ordinary ordinance requiring that any club licensed under the Private Club Act, K.S.A. 41-2601 *et seq.*, be closed between the hours of 3 a.m. and 9 a.m. on any day other than Sunday and from 3 a.m. to 12 noon on Sunday. This court held the ordinance did not conflict with the statute. "There is no disharmony between the two enactments; they may coexist with amity." 208 Kan. at 732. The plaintiffs also argued that the ordinance was void because of the preemptive provision of K.S.A. 41-208. Although acknowledging that the preemptive clause gave the State exclusive power to control and regulate traffic in alcoholic liquor and the manufacture of beer, it did not include the Private Club Act which dealt with consumption of alcoholic liquor:

"In concluding that the regulation and control of the consumption of alcoholic liquor is not an area exclusively reserved by the state we believe it is significant that when the legislature adopted K.S.A. 1971 Supp. 41-2631 as a component part of the Private Club Act, and forbade therein the enactment of any ordinance conflicting with the act, it did not include a pre-emptive provision. We cannot view the omission as unintentional. The legislature was perfectly aware of the method by which it could have vested exclusive control and regulation of liquor consumption in the state had it so intended, as is evidenced by its inclusion of the pre-emptive provision contained in K.S.A. 41-208." 208 Kan. at 735.

In *Claflin*, we said:

"Even before the passage of the home rule amendment we held that legislative intent to reserve exclusive jurisdiction to the state to regulate must be manifested clearly by statute before it can be held that the state has withdrawn from the cities power to regulate in the premises. (*City of Beloit v. Lamborn*, 182 Kan. 288, 321 P.2d 177.)

"In some cases the legislative intention has been made clear and unequivocal. By specific language the legislative intent is shown to be that the statute is to be applied uniformly to all cities. Such a statute was involved in *Ash v. Gibson*, 146 Kan. 756, 74 P.2d 136, which concerned the application of the uniform act regulating traffic on highways. There it was pointed out that in K.S.A. 8-507 the legislature stated clearly that the provisions of that act should be applicable and uniform throughout the state and in all political subdivisions and municipalities therein. In K.S.A. 41-208, a part of the Kansas Liquor Control Act, the legislature stated clearly that no city shall enact any ordinance in conflict with or contrary to the provisions of the act. An interpretation of that statute was before the court in *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P.2d 524." 212 Kan. at 7-8.

However, in *Blue Star* there is no discussion or determination that the Liquor Control Act is uniform throughout the state. There is no mention of Article 12, § 5 (home rule), nor its impact on the State's right of preemption. The *Blue Star* court based its decision solely on the preemptive language in K.S.A. 41-208. Finding no preemption, the issue was whether the ordinary ordinance conflicted with the Private Club Act. The court failed to acknowledge the impact home rule has on the State's right to preempt the field. Such failure resulted in an incorrect interpretation of K.S.A. 41-208 and created confusion as to the State's right to preempt city action. In *Claflin*, we continued the confusion by acquiescing in *Blue Star*'s interpretation of K.S.A. 41-208. The court did so by rationalizing that the preemptive language in the statute made clear the legislative intent that the statute is to be applied uniformly to all cities. *Claflin*, 212 Kan. at 8. However, since the adoption of the Home Rule Amendment, it is not the manifestation of the intent to apply a statute uniformly to all cities that controls but rather whether the constitutional requirement of uniformity is, in fact, met. As this court said in *City of Junction City*:

"Legislative intent to preempt a field is only the first of two requirements for preemption when it concerns the right of cities.

"[S]tatutory expression of intent to make a law uniform cannot supplant the constitutional requirement of uniformity. . . . The second requirement is uniform application of the state law to all cities." 227 Kan. at 336.

This confusion of State preemption by inserting preemptive language in the statute or by enacting a statute uniformly applicable

to all cities was repeated in *Bigs v. City of Wichita*, 271 Kan. 455, 464, 23 P.3d 855 (2001), where we said:

"The legislature has always been able to preclude city action by preemption. The intent to reserve exclusive jurisdiction for the State to regulate in an area cannot be implied but must be clearly manifested by state law. *City of Junction City v. Griffin*, 227 Kan. 332, 607 P.2d 459 (1980). In *Griffin*, this court noted the impact home rule had on State preemption:

" 'The grant of home rule power to cities under Article 12, § 5 of the Kansas Constitution has therefore added a new dimension to be considered in determining whether the legislature has occupied a field. Legislative intent to preempt a field is alone insufficient. It is now necessary to examine the provisions of the State enactment to determine whether the constitutional standard of uniform application to cities has been met. If not uniform, legislative intent as expressed within the enactment will not overcome the constitutional requirement for uniform application. *Clark v. City of Overland Park*, 226 Kan. 609, 602 P.2d 1292 (1979). The legislature may preempt the constitutional powers of cities only in the manner prescribed in the constitution. "As between the will of the people expressed in the constitution, and that expressed in the statute, the former always prevails." *State, ex rel. Goodin v. Thoman*, 10 Kan. 191, 197 (1872).' 227 Kan. at 336.

Following the adoption of home rule, the legislature can preempt the field either by enacting a uniformly applicable statute *or by stating in the statute that the power to regulate is vested exclusively in the state, and any ordinance in conflict with or contrary to the statute shall be null and void.* Here, we are concerned with the former and not the latter." (Emphasis added.)

In *Bigs* we continued the erroneous conclusion made in *Blue Star* that the legislature could preempt a field by clearly manifesting its intent to do so in the statute. We quoted but did not learn the lesson of *Griffin*. That lesson is that the Cities' authority is granted directly from the people through the Home Rule Amendment to the Kansas Constitution. It is a constitutional grant of authority without statutory authorization. The State may preempt the constitutional authority of cities only in the manner prescribed in Article 12, § 5 of the Kansas Constitution. As between the will of the people expressed in Article 12, § 5 and that expressed in K.S.A. 41-208, the former prevails. As provided by the Home Rule Amendment, the Cities are subject to the power of the legislature to act exclusively in some fields, optionally in others. The State's optional power to act becomes exclusive only by legislation which

is uniformly applicable to cities as provided by the Home Rule Amendment.

Thus, the provision in K.S.A. 42-208 prohibiting cities from passing ordinances in conflict with the Liquor Control Act does not prevent cities from exercising home rule with regard to liquor control. Since the adoption of Article 12, § 5 of the Kansas Constitution the State can preempt a city's authority only by making the provisions of the Liquor Control Act uniformly applicable to all cities. We disapprove of the language in *Blue Star* and *Bigs* to the contrary. Since the Liquor Control Act is not uniform, cities may charter out from under the Act. The decision to preempt liquor control still rests with the legislature; it could decide to do so by making the Liquor Control Act uniformly applicable to all cities.

The judgment of the district court is affirmed.